Mrs. Leora Kay BARKER, Individually
and in representative
capacities, Relator,

v.

Honorable Walter DUNHAM,
Jr., Respondent.

No. B–6510.

Supreme Court of Texas.

April 27, 1977.

William R. Edwards, Corpus Christi, for relator.

Kleberg, Mobley, Lockett & Weil, Lev Hunt, James W. Wray, Jr., Corpus Christi, for respondent.

STEAKLEY, Justice.

This is an original mandamus proceeding instituted by Mrs. Leora Kay Barker, individually and in representative capacities, as Relator, against Respondent, Honorable Walter Dunham, Jr., the presiding judge of the 28th Judicial District Court of Nueces County, Texas. Relator seeks a writ of mandamus requiring Judge Dunham to vacate his order of November 23, 1976, an order which denied the motion of Relator to require the completion of the deposition of James L. Montgomery and to discover various writings, memoranda, calculations, formulas, equations, or methods of calculations used by James L. Montgomery.

Mrs. Leora Kay Barker, individually and in representative capacities, has sued American Hoist and Derrick Company to recover damages for the death of Gale Floyd Barker. Mr. Barker was killed in an accident involving a crane boom designed and manufactured by American Hoist and Derrick Company and leased to Barker's employer. On September 22, 1976, Mrs. Barker attempted to take the deposition of James L. Montgomery, Vice President in charge of engineering of American Hoist. In the course of the deposition Montgomery, upon direction of counsel for American Hoist, refused to answer certain questions as to his opinions, mental impressions, and conclusions relating to the cause of the failure of the crane boom in question. Thereupon Mrs. Barker filed her motion to require the deponent to answer the questions and to complete the deposition and to order the production of all writings, memoranda, calculations, formulas, equations or methods of calculation used by Montgomery in analyzing the causes of the collapse of the boom. The motions of Mrs. Barker were heard by Judge Dunham on October 26, 1976, and at the hearing counsel for American Hoist stated under oath that he did "not know yet" if Montgomery would appear as a witness in the case but that he "might use" Montgomery. Approximately one month after the hearing, in an order dated November 23, 1976, Judge Dunham denied the motions of Mrs. Barker.

The instant petition for writ of mandamus was filed in this Court under date of January 20, 1977. In brief, Mrs. Barker contends that Montgomery is an expert witness within the provisions of Rule 167 and Rule 186a and that his reports, factual observations, and opinions are discoverable since American Hoist has stated that he may be called as a witness. In support of Judge Dunham's order it is argued that the terms "expert" and "factual observations" are ambiguous and should be interpreted narrowly and that the meaning of these terms in a given context is a matter addressed to the discretion of the trial court, the exercise of which discretion is not subject to supervision by writ of mandamus. It is settled that the writ of mandamus may issue in a discovery proceeding to correct a clear abuse of discretion by a trial judge. *Houdaille Industries, Inc. v. Cunningham,* 502 S.W.2d 544 (Tex.1973); *Maresca v. Marks,* 362 S.W.2d 299 (Tex.1962); *Crane v. Tunks,* 160 Tex. 182, 328 S.W.2d 434 (1959). The question here is whether such an abuse has been shown.

The propriety of Judge Dunham's action in denying the motions of Mrs. Barker is to be determined by application of the following provisions of Rule 167 and Rule 186a of the Texas Rules of Civil Procedure to the record before us:

Rule 167:

Upon motion of any party showing good cause therefor and upon notice to all other parties, and subject to such limitations of the kind provided in Rule 186b as the court may impose, the court in which an action is pending may order any party:

(1) To produce and permit the inspection and copying or photographing by or on behalf of the moving party of any of the following which are in his possession, custody or control: (a) any des-

ignated documents, papers, books, accounts, letters, photographs, objects or tangible things, not privileged, which constitute or contain, or are reasonably calculated to lead to the discovery of, evidence material to any matter involved in the action; . . .

.  .  .  .  .

. . . any party may be required to produce and permit the inspection and copying of the reports, including factual observations and opinions, of an expert who will be called as a witness. Rule 186a:

Any party may take the testimony of any person, including a party, by deposition upon oral examination or written questions for the purpose of discovery or for use as evidence in the action or for both purposes. . . . Provided, however, that subject to the provisions of the succeeding sentence, the rights herein granted shall not extend to the work product of an attorney or to communications passing between agents or representatives or the employees of either party to the suit, or communications between any party and his agents, representatives, or their employees, where made subsequent to the occurrence or transaction upon which the suit is based, and made in connection with the prosecution, investigation, or defense of such claim, or the circumstances out of which same has arisen, and shall not require the production of written statements of witnesses or disclosure of the mental impressions and opinions of experts used solely for consultation and who will not be witnesses in the case or information obtained in the course of an investigation of a claim or defense by a person employed to make such investigation. Provided, further, that information relating to the identity and location of any potential party and of persons, including experts, having knowledge of relevant facts, and the reports, factual observations and opinions of an expert who will be called as a witness, are discoverable.

Rule 186a as amended in 1973 retains the work product restriction on discoverable information subject, however, "to the provisions of the succeeding sentence." The exception sentence provides: "information relating to the identity and location of any potential party and of persons, including experts, having knowledge of relevant facts, and the reports, factual observations and opinions of an expert who will be called as a witness, are discoverable."

In *Houdaille Industries, Inc. v. Cunningham, supra,* we recognized the provisions of Rules 167 and 186a that restrict the discovery of certain work products. We there wrote that "[T]hese limitations upon discovery which had been carried forward in succeeding amendments to Rule 167 were modified by the 1973 amendments to the extent of providing that 'any party may be required to produce and permit the inspection and copying of the reports, including factual observations and opinions, of an expert *who will be called as a witness.*' In correlation to these provisions in Rule 167, a coincident amendment to Rule 186a provided that the reports, factual observations and opinions of an expert *who will be called as a witness are discoverable.* Also, Rule 186a was further amended to provide that the right to depose a person, otherwise authorized by the rule, 'shall not require the written statements of witnesses or disclosure of the mental impressions and opinions of experts used solely for consultation and who will not be witnesses in the case.' " *Id.* at 548.

The initial question here is whether the authorized discovery procedures apply to the witness Montgomery, an officer and regular employee of American Hoist and therefore not an "expert" specially employed for consultation. The rules draw no distinction between an expert who is a regular employee and one who is temporarily employed to aid in the preparation of a claim or defense, and we thus hold the procedures authorized by the Texas Rules of Civil Procedure apply to Montgomery. If he is an "expert" within the meaning of Rules 167 and 186a, he may be deposed

under the provisions of Rule 186a and in the manner sought here because American Hoist has neither disclaimed an intention to call him as a witness nor asserted that he will be "used solely for consultation." Where a party does not positively aver that the expert in question will be "used solely for consultation" and will not be called as a witness at the trial, the policy of allowing broad discovery in civil cases is furthered by permitting discovery of that expert's reports, factual observations, and opinions.

■ We have written that a witness is generally permitted to testify only to facts within his personal knowledge but that an exception to this is the testimony of a qualified expert in the expression of an opinion in the field of his qualifications. We said that this is permitted because experts are considered to have a special knowledge not generally possessed by jurors and are better able to draw conclusions from the facts than the jurors. *Loper v. Andrews*, 404 S.W.2d 300 (Tex.1966). As Dean McCormick has written,

> "The expert has something different [from first-hand knowledge] to contribute. This is a power to draw inferences from the facts which a jury would not be competent to draw. To warrant the use of expert testimony, then, two elements are required. First, the subject of the inference must be distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman, and, second, the witness must have such skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth."

McCormick, *Some Observations Upon the Opinion Rule and Expert Testimony*, 23 Texas L.Rev. 109, 121 (1945). *See also Federal Underwriters Exchange v. Cost*, 132 Tex. 299, 123 S.W.2d 332 (1938); *Houston & T.C.R. Co. v. Roberts*, 101 Tex. 418, 108 S.W. 808 (1908); and *Scalf v. Collin County*, 80 Tex. 514, 16 S.W. 314 (1891).

During his deposition, Montgomery testified as follows:

Q. All right, sir. Let me back up, then, for just a minute.

For the record, will you state what your occupation is, please, sir?

A. I am vice-president of engineering for American Hoist & Derrick Company.

Q. And how long have you been employed by them?

A. I have been employed by American Hoist and Derrick for twenty years.

Q. All right, sir. And what is your educational background, please, sir?

A. I have a Bachelor of Science Degree in Mechanical Engineering from Purdue University.

. . . . .

Q. Are you a member of the Society of Automotive Engineers?

A. Not a member.

Q. I see. Do you serve on any committee?

A. Until recently I did serve on one committee.

Q. And what was that committee, please, sir?

A. Subcommittee 17 which is a committee which writes the standards for mobile cranes.

Q. All right. Would that include the standards, the Society of Automotive Engineer standards for the 4460 crane?

A. Yes.

Q. Manufactured by American Hoist?

A. Yes.

Q. And, of course, the boom that is part of that crane, is that correct?

A. Correct.

Q. And in particular, the 37H type boom we are talking about here, is that right, sir?

A. Yes.

. . . . .

Q. I see. How long did you serve on that committee?

A. For several years. I don't know the exact dates.

Q. All right. Up until just recently?

A. Until this past year, yes.

.   .   .   .   .

Q. Let me ask you this, Mr. Montgomery: Have you been asked to give any consideration to what caused the failure of the boom in question in this lawsuit?

A. I have discussed it.

Q. All right, sir. Have you made calculations in that regard?

A. Yes. I have not personally made calculations in that regard.

Q. All right. Who has?

A. Members of our structural group.

Q. All right. People that work under you?

A. Yes.

Q. All right, sir. In your opinion, was the cause of the failure of the boom due to any other than the strength of the boom itself?

MR. HUNT: I believe that is going to call for matters pertaining to the investigation of the accident and we'll instruct Mr. Montgomery not to answer that.

Q. Mr. Montgomery, have you been advised whether or not you should be available to testify at the trial of this case?

A. I have not.

Q. All right. Do you expect to testify at this trial?

A. An assumption on my part.

Q. That you would?

A. If so required.

.   .   .   .   .

Q. All right, sir. I take it from what you have told us that you have been given certain facts regarding the incident in question in this lawsuit, is that correct?

A. That's right.

Q. All right, sir. And based on those facts that you have been given, you have reached certain conclusions as to what caused the failure of the boom in question, is that correct?

A. Yes.

Q. All right, sir. I will ask you at this time to enumerate for me the factors that you were given to consider in order to form that opinion.

MR. HUNT: That is one that I will instruct you not to answer.

Q. All right.

.   .   .   .   .

Q. Based on those factors, did you form a conclusion as to what caused the boom to fail?

A. Yes.

Q. All right, sir. And I will ask you what that conclusion is?

MR. HUNT: Same instruction as before.

.   .   .   .   .

Q. Mr. Montgomery, other than yourself, is there any one person with American Hoist and Derrick that is more knowledgeable or expert in the over-all boom design in the crane that we have been talking about?

A. Oh, yes.

Q. Who is that?

A. Well, Mr. Ron Kohner, Mr. Eugene Litkowitsch are both more competent in structural boom design than I am.

Q. All right. Other than yourself, is there anyone with American Hoist that is more knowledgeable and expert regarding the structural capacity of that boom?

A. I would say yes, that those same people would be more expert on structural capacity.

Q. All right, sir. Other than yourself, is there any one person in American Hoist and Derrick which would be more knowledgeable and better able to determine why this particular boom failed?

A. Well, I would assume that the specific detail calculations could be better done by structural engineers than by myself. Whether on the basis of experience

**46**

they would have any better opinion of why the boom failed than I is doubtful.

Q. All right, sir. So, given the circumstances and the calculation, there is no one more expert than you are as to have an opinion as to why the boom failed?

A. I think that is true.

This testimony establishes that Montgomery is an expert subject to being deposed in the manner sought by Relator. In refusing to order Montgomery to answer the questions put to him by Mrs. Barker's attorney, Judge Dunham abused his discretion.

We anticipate that Judge Dunham will vacate his order denying discovery of the information in question and will enter an order consistent with this opinion. Should he fail to do so, the Clerk of the Supreme Court will be instructed to issue the writ of mandamus.