Opal Lee ALLEN, Relator,

v.

Joe Bailey HUMPHREYS, Judge, 44th
Judicial District Court of Dallas
County, Texas, Respondent.

No. B–6672.

Supreme Court of Texas.

July 20, 1977.

James C. Barber, Dallas, for relator.

Thompson, Knight, Simmons & Bullion, David S. Kidder, and Timothy R. McCormick, Dallas, for respondent.

STEAKLEY, Justice.

This is an original mandamus proceeding instituted by Opal Lee Allen, Relator, against Respondent, Honorable Joe Bailey Humphreys, Judge of the 44th Judicial District Court of Dallas, County, Texas. Relator seeks a writ of mandamus requiring Judge Humphreys to vacate his orders of January 3, 1977, and February 8, 1977. The January 3 order denied Relator's Motion for Discovery Under Rule 167, a motion which sought the production of certain documents from Charter Oak Fire Insurance Company, the defendant in the trial court.[1] The February 8 order overruled Relator's Rule 215a motion to compel production, a motion necessitated by the refusal of Safeway Stores, Inc. and The Travelers Insurance Company to comply with subpoenas duces tecum issued in connection with notices of depositions upon written questions.

Mrs. Allen has filed a workmen's compensation suit against Charter Oak Fire Insurance Company, the insurer of Safeway Stores, Inc. She alleged that she suffered from lung cancer and that the cause of her condition was her exposure, during the course and scope of her employment in the meat department of a Safeway store, to polyvinyl chloride particles released into the air when meat wrapping film was cut with a hot wire. Mrs. Allen alleged that as a result of her affliction she was totally and permanently disabled. In order to facilitate proof of her case, she sought discovery of numerous items from Safeway, from Charter Oak Fire Insurance Company, Safeway's insurer, and from The Travelers Insurance Company, Charter Oak's parent company. From each Mrs. Allen sought: (1) copies of any surveys or test reports, done by anyone, which reflected tests or surveys done in any grocery store to determine the amount or composition of particles released by burning of the plastic meat wrapping film used by Safeway; (2) all formal and informal complaints by private individuals or government agencies in the possession of the defendant or to which it had access claiming that persons had contracted cancer as a result of breathing fumes emitted from the cutting of plastic sheeting containing polyvinyl chloride, and all correspondence by which the defendant responded to the complaints; (3) all medical, laboratory, or other expert reports, not made in connection with the investigation or defense of the plaintiff's claim, either directly written by the expert or summaries thereof, dealing with the possibility or probability that fumes released in the hot wire cutting of plastic sheeting containing polyvinyl chloride could or might cause cancer or any type of lung disease; (4) all correspondence, memoranda, safety bulletins, or any other communications between the defendant and any other person, not made by the defendant in connection with the investigation or defense of plaintiff's claim, reflecting a decision by Safeway to abandon the use of hot wire cutting of plastic meat wrapping material, reflecting the possibility of a health hazard to persons breathing fumes from the hot wire cutting of such material, reflecting expert concern in the

---

1. All references are to Texas Rules of Civil Procedure (1976).

industry about such a hazard, reflecting any corrective measures that could or should have been taken by the employer or manufacturer to correct any health hazards posed by the hot wire cutting of plastic meat wrapping material, and reflecting any other relevant information concerning the hazard or potential hazard which caused Safeway to discontinue the use of the materials; (5) copies of any scientific studies, done by the defendant or in its possession and not made in connection with the investigation or defense of Mrs. Allen's claim, reflecting any conclusions concerning the possible causal relationship between polyvinyl chloride or any chemical fumes emitted from the burning of plastic sheeting used for meat wrapping and cancer or any lung disease; and (6) copies of all reports from expert witnesses which the defendant intended to call during the trial.

Mrs. Allen sought production of the requested items from Charter Oak, the party defendant, under the relevant provisions of Rule 167. As to Safeway and The Travelers Insurance Company, Mrs. Allen filed notices to take depositions upon written questions. Pursuant to Rule 201, the notices were accompanied by subpoenas directing Safeway and Travelers to produce the identical documents requested from Charter Oak. Safeway and Travelers joined in a Motion to Quash the discovery but the motion was not acted upon. Nevertheless, Charter Oak refused to produce the requested items, and though the designated representatives of Safeway and Travelers appeared for purposes of being deposed, they refused to produce or answer questions regarding the documents sought by Mrs. Allen. Mrs. Allen then filed a motion under Rule 215a requesting the trial court to order Safeway and Travelers to produce the requested items. Additionally, she urged the trial court to rule on the original Motion for Discovery Under Rule 167. The trial court denied both motions, and it is from this action that she seeks relief by the writ of mandamus.

On behalf of Judge Humphreys, Charter Oak, Safeway, and Travelers initially argue the extraordinary writ of mandamus is not available to the Relator in this case. They assert that a writ of mandamus is improper to review an interlocutory discovery ruling of the trial court and that, furthermore, in the instant case Mrs. Allen has an adequate remedy via the normal appellate process. We have previously held that the writ of mandamus is proper in cases where a trial judge has abused his discretion in ordering the wholesale production of certain highly confidential information. *Crane v. Tunks*, 160 Tex. 182, 328 S.W.2d 434 (1959); *Maresca v. Marks*, 362 S.W.2d 299 (Tex.1962). In a more recent case, *Barker v. Dunham*, 551 S.W.2d 41 (Tex.1977), we held a trial judge had abused his discretion in denying discovery of certain properly discoverable information. It was there asserted that the discovery motion in question was addressed to the discretion of the trial judge, and that his exercise of that discretion was not subject to supervision by the writ of mandamus. A unanimous court disagreed, stating "the writ of mandamus may issue in a discovery proceeding to correct a clear abuse of discretion by a trial judge." *Id.* at 42. Thus, here, as in *Barker*, the question is whether such a clear abuse of discretion has been shown. We will first consider the trial court's action in denying Mrs. Allen's Motion for Discovery Under Rule 167, the motion directed at Charter Oak.

Rule 167 of the Texas Rules of Civil Procedure governs the discovery and production of documents and other tangible items. Generally, it permits the discovery from another party to the lawsuit of "any designated documents, papers, books, accounts, letters, photographs, objects or tangible things, not privileged, which constitute or contain, or are reasonably calculated to lead to the discovery of, evidence material to any matter involved in the action". The party seeking discovery must show good cause, and the party from whom discovery is sought cannot be required to disclose privileged material. All traditional rules of testimonial privilege can be invoked to prevent discovery of items under Rule

167. Tex.R.Civ.P. 167, comment (1976); 2 R. McDonald, Texas Civil Practice § 10.03 (1970). However, the privilege most prominently asserted in the instant case is that delineated in the third paragraph of Rule 167, wherein it is provided that the right of discovery

> shall not extend to other written statements of witnesses [i. e., written statements of testifying non-experts] or other written communications passing between agents or representatives or the employees of either party to the suit, or to other communications between any party and his agents, representatives, or their employees, where made subsequent to the occurrence or transaction upon which the suit is based, and made in connection with the prosecution, investigation or defense of such claim or the circumstances out of which same has arisen.

Simply stated, this privilege can be invoked where three factors coexist: (1) the material sought to be discovered is either (a) a written statement by a non-expert witness, (b) a written communication between agents, representatives, or employees of either party to the suit, or (c) written communications between any party and his agents, representatives, or their employees; (2) the statement or communication is made subsequent to the occurrence or transaction upon which the suit is based; and (3) the statement or communication is made in connection with the prosecution, investigation, or defense of the particular suit or in connection with the investigation of the particular circumstances out of which it arose.

■ Certain other rules relating to discovery of tangible items and documents have been abstracted from the relevant Texas Rules of Civil Procedure and announced by this Court. For example, it is well-established that a party cannot require the disclosure "of the mental impressions and opinions of experts used solely for consultation and who will not be witnesses in the case". Tex.R.Civ.P. 186a; *Houdaille Industries, Inc. v. Cunningham*, 502 S.W.2d 544 (Tex.1973). In the proviso of Rule 167, discussed in some detail above, the word "communications" has been construed to

mean only written communications. *Id.* Photographs are not considered written communications unless they are part of a written report, and if they are contained in a report, they are subject to discovery only where the report itself is discoverable. *Id.* Most recently, in *Barker v. Dunham, supra,* this Court held that an officer and regular employee of a party, if he qualifies as an "expert," is subject to the same rules regarding discovery as a specially employed expert. We also held that an expert's reports, factual observations, and opinions are discoverable unless the party resisting discovery positively avers that the expert will be used solely for consultation and will not be called as a witness at the trial. It is with these and other governing principles in mind that we proceed to determine whether the trial court clearly abused its discretion in denying the discovery sought here.

■ In support of the trial court order denying discovery it is argued that the information sought to be discovered is relevant only on the issue of Safeway's fault, and since fault is not an issue in a workmen's compensation suit, it is asserted the items sought do not "constitute or contain" and are not "reasonably calculated to lead to the discovery of" evidence "material to any matter involved in the action." Though undoubtedly relevant to the issue of Safeway's fault, the items sought by Relator are also relevant to the issue of whether the conditions under which Mrs. Allen worked contributed to the cause of her affliction. Any test results, reports, surveys, and complaints by similarly affected individuals might reveal a causal relationship between the working conditions experienced by the Relator and the disease suffered by her, and if not themselves admissible, such documents reasonably might be expected to lead to the discovery of relevant and admissible evidence.

■ Mrs. Allen's Motion for Discovery Under Rule 167 first requested "[C]opies of any surveys or test reports done by anyone, which reports are in the custody or possession of defendant, which reflect tests or

surveys done in any grocery store to determine the amount or composition of particles released upon the decomposition by burning of plastic sheeting containing polyvinyl chloride, either presently used or formerly used by Safeway Stores, Inc. for wrapping meats in its meat departments." It is argued that any such surveys or tests would be privileged because they were done in anticipation of or as part of the investigation of a claim or lawsuit. The results of a test or survey done after the institution of Mrs. Allen's suit or after Safeway and Charter Oak had good cause to believe such a suit would be filed would be privileged if the defendant could show the survey or test was made "in connection with the prosecution, investigation or defense of such claim or the circumstances out of which same has arisen." The privilege against discovery can be invoked only where the document sought to be protected was prepared in connection with the prosecution or defense of the lawsuit in which the discovery is sought, and in the instant case Charter Oak denied that any survey or test of the type requested had been performed in connection with Mrs. Allen's claim. Thus, subject to a showing of good cause and materiality and subject to the limitation announced by this Court in *Ex Parte Shepperd*, 513 S.W.2d 813 (Tex.1974), the tests and surveys requested by Relator and in the custody of Charter Oak are discoverable because, by Charter Oak's admission, they were not prepared in connection with the prosecution or defense of Mrs. Allen's suit. In *Shepperd* we held that production of reports prepared by non-testifying experts in a separate pending suit should not be ordered produced except upon "an especially rigorous showing of good cause". Finding no such showing here, we hold that Relator is not entitled to procure by discovery any tests and surveys made by experts employed "solely for consultation" in similar pending suits, if any, against any of these defendants. However, in connection with other such tests and surveys, we are persuaded that they would be material to the issue of causation and that the complexity and substantial expense of conducting similar tests suffice to show

good cause. We therefore hold that, except insofar as such tests and surveys came within the rule announced in *Shepperd, supra,* the trial court abused its discretion in denying this aspect of Relator's motion for discovery.

Mrs. Allen also sought production of "[A]ll complaints, either in the form of formal complaint by lawsuit, or informal complaints by letter or inquiry by private individuals, or letter of complaint or inquiry by government agencies in the possession of the defendant or to which it has access, claiming that persons either in the Dallas area or elsewhere have contracted cancer as a result of breathing fumes emitted from hot wire cutting of plastic sheeting containing polyvinyl chloride, either before or after May of 1974; and all correspondence, documents, investigative reports, or any paper by which the defendant responded to these complaints." In support of Judge Humphreys' order Charter Oak asserts that all of the above-enumerated items would be inadmissible hearsay and are irrelevant to the issues in Mrs. Allen's suit. The argument is not well founded. Rule 167 does not require as a prerequisite to discovery that the items sought to be discovered be admissible into evidence. It is enough that the documents in question be "reasonably calculated to lead to the discovery of" evidence material to the cause of action. Furthermore, the above-described complaints and answers might well establish a pattern of disease and for that reason are relevant on the issue of causation. Thus the documents are material to the issue of causation, and, together with their unavailability from any other source, this suffices to show good cause for their production.

Additionally, Mrs. Allen sought production of "[A]ll medical reports, laboratory reports, or any reports containing the opinions of experts, not made by defendant in connection with the investigation or defense of plaintiff's claim, either directly written by the expert or summaries thereof, including physicians, engineers, industrial hygienists, or any expert person, in any way dealing with the possibility or probability

that fumes released in the hot wire cutting of plastic sheeting containing polyvinyl chloride could or might cause cancer or any type of lung disease." Copies of scientific studies reflecting any conclusions concerning the possible causal relationship between polyvinyl chloride or other fumes emitted from the burning of the material in question and cancer or any other lung disease were also requested. Subject to the limitations announced by this Court in *Shepperd, supra,* these items, too, are discoverable. The reports are directed to the issue of causation and are unavailable from other sources. The request for production specifically excludes reports made by Charter Oak in connection with the investigation or defense of Mrs. Allen's claim. However, the reports of experts who have been retained solely for consultation in the instant case are immune from discovery. Tex.R.Civ.P. 186a; *Houdaille, supra.* Similarly, reports of experts who have been retained in other pending suits of the same nature and whose reports would be unavailable to the opposing party in such cases are not discoverable for purposes of the instant case absent "an especially rigorous showing of good cause." We find no such showing here.

■ By her motion for discovery Mrs. Allen also sought: "[A]ll correspondence, memoranda, safety bulletins, or any other communications between the defendant and any other person either before or after plaintiff's claim arose on or about May of 1974, not made by defendant in connection with the investigation or defense of plaintiff's claim, reflecting a decision on the part of Safeway Stores to abandon the use of hot wire cutting of plastic meat wrapping material, reflecting the possibility of a health hazard being suffered by people breathing fumes from hot wire cutting of such material; reflecting expert concern in the industry about such a hazard; reflecting any corrective measures that could or should have been taken on the part of the employer or manufacturer to correct any health hazards related to hot wire cutting of plastic sheeting or related in any way to polyvinyl chloride fumes released thereby; and reflecting any other relevant informa-

tion concerning the hazard or potential hazard which has or did cause Safeway Stores, Inc., plaintiff's employer, to discontinue the use of these materials, or which does or would cast probative light on whether or not plaintiff's cancer is or could have been caused by polyvinyl chloride fumes breathed while in the course of her employment for her employer, Safeway Stores, Inc." These documents, too, would be relevant on the issue of causation. They are internal documents of Safeway and unavailable from any other source. Furthermore, Mrs. Allen has sufficiently demonstrated a need for the documents. We hold the trial court abused its discretion in denying Mrs. Allen's motion for discovery in this respect.

■ Finally, Relator seeks production of copies of all reports from the experts Charter Oak intends to call as witnesses in the trial of this case. Charter Oak, in brief and in oral argument, admits that such reports are properly discoverable, but it asserts that it has not yet employed its expert witnesses. Relator does not argue to the contrary, and thus there appears to be no dispute between the parties on this aspect of the case. Charter Oak is under a clear legal duty to disclose the reports of expert witnesses who will testify at the trial.

We thus conclude that in the respects and for the reasons enumerated above, the trial court abused its discretion in denying Mrs. Allen's requested discovery from Charter Oak. The Respondent does not dispute that if the items are discoverable from Charter Oak, they are also subject to subpoena from nonparties Safeway and Travelers. *See* Tex.R.Civ.P. 186a. We therefore hold that for the reasons detailed above, the trial court abused its discretion in denying Relator's Rule 215a motion to compel production of the documents in question.

We anticipate that Judge Humphreys will vacate his orders denying discovery of the information in question and will enter an order consistent with this opinion. Should he fail to do so, the Clerk of the Supreme Court will be instructed to issue the writ of mandamus.