Mary L. GREEN, Relator,

v.

The Honorable I. Allen LERNER,
Judge of the 56th District Court
of Galveston County, Texas, Respondent.

No. 01–89–01156–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 22, 1990.

.T. Wade Welch, Houston, for relator.

Phil Werner, Galveston, Reagan Wm. Simpson, Houston, for respondent.

Before EVANS, C.J., and MIRABAL and DUGGAN, JJ.

## OPINION

MIRABAL, Justice.

Relator seeks a writ of mandamus vacating the respondent's order of July 13, 1989, which barred the discovery of certain documents related to an industrial accident.

We overrule the motion for leave to file a petition for writ of mandamus.

### I.  The Proceedings Below

The relator, Mary L. Green, sues the real party in interest, Marathon Petroleum Company, Inc., for personal injuries she alleges she suffered on October 31, 1987, when an accident at Marathon's Texas City refinery released a cloud of hydrofluoric acid into that area's atmosphere. The relator's action was one of more than 200 arising from the accident and consolidated by the trial judge for discovery purposes.

On December 5, 1988, the relator served Bob Alcock, the manager of Marathon's Texas City plant, with notice of her intention to take his deposition on the following December 19. The notice, which was directed to Alcock individually and as a representative of Marathon, included a subpoena duces tecum calling for the production of 47 categories of documents at the deposition.

On December 16, Marathon produced documents responsive to the subpoena duces tecum. Simultaneously, Marathon filed and served a motion for protection that asserted privileges against the disclosure of certain documents in 18 of the 47 categories. On January 10, Marathon submitted the affidavit of its in-house counsel, Carla Bishop, in support of its motion for protection. On January 25 and February 8, 1989, the trial judge conducted an oral hearing on Marathon's motion for protection. On February 13, he conducted an in camera inspection of the documents in controversy, and on July 13 signed his order protecting those documents from disclosure.

In her mandamus petition, the relator has narrowed her challenge to Marathon's motion for protection, and now seeks the production of documents responsive to 11 of her requests. She seeks documents (1) showing the physical state of the equipment involved in the accident and the surrounding area (requests six, seven, eight, 10, and 41); (2) addressing the use and effects of hydrofluoric acid and Marathon's knowledge of those effects (requests 14

and 38); and (3) created during Marathon's investigation of the accident (requests 27, 32, 33, and 37).

Marathon produced certain documents responsive to these 11 requests. However, Marathon refused to produce documents that allegedly fell within the following pertinent privileges: (1) the attorney work product doctrine, for documents generated by Marathon's attorneys in anticipation of litigation, Tex.R.Civ.P. 166b(3)(a); (2) the consulting experts privilege, for documents containing the identities and mental impressions of consultants employed by Marathon in anticipation of litigation, Tex.R.Civ.P. 166b(3)(b); (3) the witness statements exemption, for stenographic transcriptions of the statements of 19 witnesses taken by Marathon in anticipation of its defense, Tex.R.Civ.P. 166b(3)(c); and (4) the party communications exemption, for communications made between Marathon employees in anticipation of Marathon's defense, Tex.R. Civ.P. 166b(3)(d). The relator asks that we review the sufficiency of Marathon's pleading and proof of the applicability of each of these privileges. Marathon asserted multiple privileges for many documents. We will discuss only those issues and privileges necessary to our disposition of this proceeding.[1]

## II. The Standard of Review

■■■ In seeking mandamus, the relator labors under a heavy burden. She must establish, under the facts and circumstances of her case, that the facts and law permit the trial court to make but one decision. Mandamus will not issue to control the action of a lower court in a matter involving discretion, but is available only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917–18 (Tex.1985).

We may not disturb the trial court's ruling unless we find a clear abuse of discretion for which there is no adequate remedy by appeal. *Jampole v. Touchy*, 673 S.W.2d 569, 572 (Tex.1984). The relator bears the burden of showing that the facts of the case and the applicable law permitted the trial court to make but one decision in this case: to compel production. *See Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985).

This is Green's second mandamus petition. We overruled her first motion for leave to file a petition for writ of mandamus on November 21, 1989. In that opinion, we held that Marathon sufficiently pleaded the privileges establishing its right to protection. Green's failure to provide a certified statement of facts from the discovery hearings below prevented us from reviewing her claims that Marathon failed to prove the application of its privileges. Green has filed a certified statement of facts with her second motion for leave. Her mandamus pleadings are otherwise identical to the papers she first filed with this Court. Our conclusions have not changed regarding the issues that we disposed of in our first opinion, which concerned the adequacy of Marathon's pleadings asserting its right to protection. Because our first opinion was unpublished, we restate those conclusions in the following paragraphs.

## III. The Sufficiency of Marathon's Pleading of Privilege

■■■ Relator first complains that Marathon failed to specifically plead which specific documents were exempt from discovery. Marathon pleaded that a specific exemption applied to each of relator's requests for production. Nevertheless, relator contends that Marathon waived its privileges by failing to identify, in its motion for protection, each specific document it asserted was exempt from discovery.

---

**1.** Marathon also asserted the investigative privilege and the joint defense privilege. We note that the investigative privileges generally include attorney work product, consulting experts, witness statements, and party communications. *See Boring & Tunneling Co., Inc. v.*

*Salazar,* 782 S.W.2d 284 (Tex.App.—Houston [1st Dist.] 1989). We do not address the joint defense privilege because it was only raised in conjunction with other privileges that we find dispositive.

Rule 166b(4) requires a specific pleading of the "particular exemption or immunity from discovery relied upon...." We concur with the Dallas Court of Appeals that the privilege and its application must be specifically pleaded by the objecting party, *National Union Fire Ins. Co. v. Hoffman,* 746 S.W.2d 305, 307 n. 3 (Tex.App.—Dallas 1988, orig. proceeding), but we do not agree with the relator's contention that an objection is insufficiently specific unless it includes a list of the specific documents for which protection is sought.

Although the rule governing production of documents, Tex.R.Civ.P. 167, does not literally apply to this case, which involves a subpoena duces tecum controlled by rules 201, 177a, and 166b, rule 167 does provide guidance regarding the degree of specificity required of a party objecting to a subpoena duces tecum. Rule 167 allows a party to request production by setting forth "the items to be inspected either by individual item or by category...." Tex.R.Civ.P. 167(1)(c). The rule directs the responding party to comply with the request, "except only to the extent that he makes objections in writing to particular items, *or categories of items,* stating particular reasons why such discovery should not be allowed." Tex.R.Civ.P. 167(1)(d) (emphasis added). The relator requested production of documents by category. Marathon's motion for protection properly referred to the categories of documents designated by the relator. The motion for protection was not deficient in failing to identify "particular items" when particular items were not requested.

The cases relator cites as authority do not support her contention that Marathon's pleading was insufficient. For example, the relator quotes the following language from *Weisel Enterprises, Inc. v. Curry,* 718 S.W.2d 56, 58 (Tex.1986): "Any party who seeks to exclude documents from discovery *must specifically plead the particular privilege,* immunity or exclusion applicable *to the document in question* and produce evidence supporting such claim" (relator's emphasis). This quotation simply restates the requirement that a party resisting discovery "must specifically plead the particular exemption or immunity from discovery relied upon...." Tex.R.Civ.P. 166b(4). In *Weisel,* the supreme court did not hold that the movant for protection is required to provide an itemized list of privileged documents.

Similarly, in *Shell Western E & P, Inc. v. Oliver,* 751 S.W.2d 195, 196 (Tex.App.—Dallas 1988, orig. proceeding), the Dallas Court of Appeals noted that Shell "specifically pleaded the attorney client privilege *for each of the documents* that it wished to withhold" (relator's emphasis). Again, the relator's quotation is lifted out of its context. In *Shell Western,* the parties did not raise the issue of the specificity of Shell's pleading. Consequently, the Dallas court did not hold that a motion for protection must include a list of specific documents.

## IV. The Sufficiency of Marathon's Proof of Privilege

The relator also argues that Marathon failed to prove that the documents in controversy were exempt from discovery. In her mandamus petition, she generally contends that neither the Bishop affidavit nor Bishop's testimony established the essential elements supporting Marathon's invocation of the consulting expert exemption, the joint defense privilege, the work product privilege, or the trade secrets privilege.

### A. Consulting Experts

█ Marathon asserted the consulting expert privilege in response to eight of the 11 requests at issue. We will first address that discovery exemption, which resolves many of the remaining issues.

The consulting expert privilege protects from disclosure the identity, mental impressions, and opinions of a nontestifying expert who has been consulted in anticipation of litigation, except when that expert's work product is a basis of the testimony of an expert who will be called as a witness. Tex.R.Civ.P. 166b(3)(b). The facts known, mental impressions, and opinions of testifying experts are also discoverable. Tex.R.Civ.P. 166b(2)(e). The relator complains that Marathon failed to plead or prove that

the experts retained to investigate the industrial accident are covered by the consulting expert privilege. She does not argue that the experts were not retained in anticipation of litigation, but contends that Marathon has failed to establish their status as nontestifying consultants.

Marathon's corporate counsel, Carla Bishop, testified that Marathon retained expert consultants in anticipation of litigation. She also testified that discovery had not yet reached a point where Marathon was willing to identify those consultants as testifying experts. Marathon tendered documents relating to those consultants for in camera inspection by the trial court. We have reviewed those documents, which were forwarded to us by the district clerk, and find that they do reveal the identities, mental impressions, and opinions of experts, and would not be discoverable if not relied upon by testifying experts. The question before us is thus reduced to whether Marathon had a duty to designate its testifying experts at the time of the hearing on its motion for protection.

In arguing that Marathon waived its consulting experts privilege, the relator relies on language from *Barker v. Dunham*, 551 S.W.2d 41 (Tex.1977). In that case, the plaintiff in a wrongful death action took the deposition of an employee of the defendant. During the deposition, the employee admitted that "there is no one more expert than [he] as to have an opinion why" the accident in question occurred. *Id.* at 46. The employee also admitted that he would testify at trial "[i]f so required." *Id.* at 45. The plaintiff moved to have the deponent produce documents reflecting his mental impressions and opinions regarding the cause of the accident. The trial court denied that motion. The supreme court then granted a writ of mandamus, based on its conclusions (1) that the employee was an expert and (2) that the defendant had not disclaimed an intention to call him as a witness at trial. In connection with the latter conclusion, the court noted that,

> Where a party does not positively aver that the expert in question will be "used solely for consultation" and will not be called as a witness at the trial, the policy of allowing broad discovery in civil cases is furthered by permitting discovery of that expert's reports, factual observations, and opinions.

*Id.* at 44. The relator relies on this statement to support her argument that Marathon was bound to designate its testifying experts at the initial stage of document production.

We do not agree. Two years after *Barker v. Dunham* was decided, the supreme court noted that *Barker* did not answer the question, "at what stage of the proceedings must a party 'positively aver' that an expert consultant will not be a witness?" *Werner v. Miller*, 579 S.W.2d 455, 456 (Tex.1979). In *Werner*, the supreme court held that the question of timing is a matter within the trial court's discretion, and observed that the party employing a consultant must be given sufficient time to develop its case so an intelligent decision can be made regarding the use of the expert. *Id.* The *Werner* holding has since been codified in the rules of civil procedure. Tex.R. Civ.P. 166b(2)(e)(3); *see* D. Keltner, *Rutter Group Practice Guide: Texas Discovery* 10:35 (1989) (general discussion of principles underlying designation of testifying experts).

The rules provide that the identity of an expert witness, and the substance of the expert's testimony, must be provided "in response to an appropriate inquiry ..., as soon as is practical, but in no event less than thirty (30) days prior to the beginning of trial except on leave of court." Tex.R. Civ.P. 166b(6)(b). Even in the absence of an appropriate inquiry from the opposing party, the trial judge has the discretion to set a reasonable deadline for a party to designate its testifying experts. Tex.R. Civ.P. 166b(2)(e)(3). If we were to adopt the relator's position that Marathon had an absolute duty to identify its testifying experts at the time of the relator's first document request, we would strip the trial court of its discretion to determine a reasonable deadline before trial that is "as soon as is practical."

We hold that the trial court acted within its discretion in ruling that Marathon had not waived its consulting expert privilege. Marathon's house counsel testified that discovery had not progressed to the point that Marathon could identify its testifying experts, and the mandamus record as a whole suggests that discovery has not advanced beyond its initial stages. The relator did not contradict Marathon's position that it was not yet able to identify its experts. On this record, we do not find that the facts and circumstances compelled a ruling contrary to that made by the trial court. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d at 917–18.

We emphasize that our holding is limited to the record that appears before us. Marathon is bound to identify its expert witnesses as soon as it is practical to do so. That determination of timing is one within the continuing supervision and discretion of the trial court. *Werner v. Miller*, 579 S.W.2d at 456; TEX.R.CIV.P. 166b(2)(e)(3).

### B. Attorney Work Product

■ Marathon also asserted the work product doctrine protects documents in seven of the 11 categories in controversy. Carla Bishop testified that those documents were generated by attorneys employed by Marathon in anticipation of litigation. Bishop's testimony established the essential elements of the privilege, which "protects against disclosure of specific documents, reports, communications, memoranda, mental impressions, conclusions, opinions, or legal theories, prepared and assembled in actual anticipation of litigation or for trial." *Evans v. State Farm Mut. Auto. Ins. Co.*, 685 S.W.2d 765, 767 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e). We have reviewed those documents, which consist of a small packet of attorney research notes, summaries of witness statements, and attorney correspondence, and find that they are protected by the work product doctrine.

### C. Witness Statements

■ Bishop's affidavit established that Marathon took statements from witnesses "in anticipation of pending litigation and also in anticipation of additional lawsuits which Marathon had good cause to believe would be filed and which in fact have been filed since." This averment stated the elements of the witness statements privilege. Tex.R.Civ.P. 166b(3)(c). Green does not argue that the statements were not taken in anticipation of litigation. We have examined those witness statements and find that they are privileged from discovery.

### D. Party Communications

■ Marathon asserted that another document, a memorandum dated March 14, 1988, from a Marathon employee to Carla Bishop, was protected by the party communications exemption, which shields communications between a party's representatives and agents made subsequent to the occurrence upon which a suit is based, when made in anticipation of litigation. Tex.R. Civ.P. 166b(3)(d). Bishop testified that communications between Marathon's employees were made in order to prepare Marathon's defense. The relator does not contend that Marathon failed to prove that this document was prepared in anticipation of litigation. We have examined the memorandum in question and find that a Marathon engineer sent it to Carla Bishop after the October 31, 1987, leak of hydrofluoric acid. Bishop's testimony and the document itself established the applicability of the party communications exemption.

## V. The Failure of the Record to Reflect a Demand for Other Relief Sought

Our discussion in the preceding paragraphs resolves all but two of the relator's discovery requests. In her mandamus petition, the relator urges that Marathon waived its privileges with regard to request 27, which called for "memoranda ... concerning instructions given to your agents concerning the execution of any claim releases arising out of ... this cause of action."

Marathon asserted the party communications privilege in objecting to request 27. Carla Bishop testified that Jerry Stifflemire was Marathon's agent in charge of

settling damages claims. She testified that she and Stifflemire had exchanged correspondence discussing the details of those claims. At the January 25 hearing, the court sustained Marathon's objection that such documents were privileged party communications. However, the trial court's order of July 13, 1989, recites that,

> [b]y agreement of counsel, the parties have agreed that, ... with respect to communications and documents passing between Marathon and Jerry R. Stifflemire, Marathon be required to produce only releases it asserts were executed by a person named in Plaintiffs' most recent pleadings in this cause, together with any general instructions to Mr. Stifflemire relating to claims against Defendants in general, but not such documents which relate to any individual claimant, except as hereinabove stated....

We have searched the mandamus record but can find no explanation for the discrepancy between the trial court's oral ruling and his written order. The relator's mandamus petition does not challenge the order's conclusion that the parties agreed to the production of the documents described in the order.

■ We find no abuse of discretion on this record. If the relator wished to contest the trial court's conclusion that the Stifflemire correspondence was the subject of an agreement between the parties, it was her burden to "set forth in a concise and positive manner all facts that are necessary to establish relator's right to the relief sought." Tex.R.App.P. 121(a)(2)(C). We will not issue a writ of mandamus when the application for the writ leaves us speculating about the justification for the requested action. *Rowe v. Moore*, 756 S.W.2d 117, 119 (Tex.App.—Houston [1st Dist.] 1988, orig. proceeding). Accordingly, we must presume that the order accurately recites the terms of the parties' agreement.

Finally, the relator challenges Marathon's failure, in response to request 37, to produce a videotape allegedly made by a consulting expert. Marathon pleaded the trade secrets privilege against disclosure. The relator contends that Marathon waived the privilege by failing to produce evidence in support of it, and by not tendering it for in camera inspection.

We need not address the merits of relator's arguments. The statement of facts from the January 25 hearing shows that production of the videotape in question was one of several items that the parties agreed to resolve without the trial court's intervention. After that agreement was made on the record, the relator failed to renew her request for the videotape. Again, we cannot presume that the record is inaccurate and grant the writ of mandamus. The record suggests that the parties intended to settle this issue, and we will not presume otherwise without a specific showing by the relator of (1) an affirmative demand for relief, and (2) an abuse of discretion in denying relief. *See Doctors Hosp. Facilities v. Fifth Court of Appeals*, 750 S.W.2d 177, 178 (Tex.1988) (stating requisites of demand and refusal in mandamus actions).

### VI. Conclusion

We conclude that the trial court adhered to the legal principles required by Tex.R. Civ.P. 166b(4) in conducting the hearings on Marathon's motion for protection. His order was supported by Marathon's pleadings and by the evidence before him, in the form of the Bishop affidavit, Bishop's testimony, and the documents tendered for in camera review. We find no abuse of discretion.

The motion for leave to file a petition for writ of mandamus is OVERRULED.