SHELL OIL COMPANY, Relator,

v.

The Honorable Shearn SMITH, Judge of the 61st District Court of Harris County, Texas, Respondent.

No. A14–91–0299–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 8, 1991.

Burt Ballanfant, Kathleen Walsh Beirne, Houston, for appellant.

Russell W. Budd, Dallasston, Charles S. Siegel, Dallas, David Crump, Houston, for

Before PAUL PRESSLER, JUNELL and ELLIS, JJ.

## OPINION

JUNELL, Justice.

In this original proceeding for writ of mandamus and request for temporary relief, relator Shell Oil Company ("Shell") seeks to vacate the trial court's order denying Shell's motion for protective order and ordering Shell to comply with a request for production filed by the real parties in interest ("Plaintiffs"). Shell further seeks to compel the respondent to issue a protective order altering the sequence of discovery. We deny the relief sought.

This proceeding arises from the cause of action styled *Domingo Castro Alfaro, et al. v. Dow Chemical Company, Shell Oil Company and Amvac Chemical Corporation*, Cause No. 84–17171, pending in the 61st District Court of Harris County before the Honorable Shearn Smith. The lawsuit was filed in 1984 by eighty-two Costa Rican residents who alleged permanent physical injury as a result of their exposure to the nematocide dibromochloropropane ("DBCP"). The substance was manufactured by Shell and marketed under the trade-name "Nemagon", and manufactured by codefendant Dow Chemical Company ("Dow") and sold under the trade-name "Fumazone". Plaintiffs allege their injuries, including permanent sterility, were proximately caused by exposure to the chemical during their employment on banana plantations located in Costa Rica and owned by Standard Fruit Company, to which Shell and Dow allegedly supplied the nematocide.

Shell contends in its brief that an additional 370 real parties in interest exist and will be affected by this court's decision.

Those parties are Costa Rican plaintiffs in eight other cases now pending in the United States District Court for the Southern District of Texas, subject to consolidation on remand to state court. The record contains no order for remand and, therefore, our holding can extend only to the single case now within our jurisdiction.

In 1987, defendants in this suit contested jurisdiction in their motion to dismiss and, alternatively, contended that the suit should be dismissed under the doctrine of forum non conveniens. The trial court found jurisdiction but dismissed on the grounds of forum non conveniens. The Texas Supreme Court reversed and remanded for trial pursuant to TEX.CIV.PRAC. & REM.CODE ANN. § 71.031 (Vernon 1986). *See Alfaro v. Dow Chemical Co.*, 751 S.W.2d 208 (Tex.App.—Houston [1st Dist.] 1988), *aff'd*, 786 S.W.2d 674 (Tex.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 671, 112 L.Ed.2d 663 (1991). The dispute now before this court involves the trial court's order for the sequence of discovery after remand and its ramifications.

Shell and Dow propounded requests for admission and written interrogatories to plaintiffs in November 1985. Among the interrogatories and their written responses were the following:

1) If the answer to Request for Admission No. 1 is other than an unqualified admission, please answer the following interrogatories:

a) State the name of the product allegedly made by Shell to which the plaintiff was allegedly exposed.

*Answer:* Nemagon.

b) State the dates plaintiff alleges that his or her exposure to DBCP occurred.

*Answer:* Plaintiff was exposed since [sic] 1970.

. . . .

e) Describe the containers in which the product was contained at the time of plaintiff's alleged exposure including but not limited to color, size, shape format and language used on the label.

*Answer:* They were white metal containers with white labels with red lettering of Nemagon.

. . . .

2) If the answer to Request for Admission No. 2 is other than an unqualified admission please answer the following interrogatories:

a) State the name of the product allegedly made by Dow to which the plaintiff was allegedly exposed.

*Answer:* Fumazone.

b) State the dates plaintiff alleges that his or her exposure to DBCP occurred.

*Answer:* Plaintiff was exposed since [sic] 1970.

. . . .

e) Describe the containers in which the product was contained at the time of plaintiff's alleged exposure including but not limited to color, size, shape format and language used on the label.

*Answer:* They were white metal containers with white labels with red lettering of Fumazone.

In response to other interrogatories, plaintiffs further alleged they were exposed to DBCP between 1960 and 1978 at various locations in Costa Rica, including Standard Fruit's Rio Frio plantation.

The record establishes that Shell sold Nemagon to Standard Fruit from 1967 until some time during 1970. Shell delivered the product to Standard Fruit in the United States but did not ship supplies to Costa Rica for their use. Standard Fruit Company did not purchase Shell DBCP products for use in Costa Rica after 1970. From October 1970 until discontinuation of its use in 1978, Standard Fruit's use of DBCP was primarily from supplies of Fumazone supplied by Dow.

Subsequent to the 1990 remand by the Supreme Court to the trial court, plaintiffs served requests for production of documents upon defendants. By letter dated December 18, 1990, Shell supplied plaintiffs' attorneys with copies of the labels used on containers of Nemagon between 1967 and 1970. On January 14, 1991, plaintiffs filed the following answers to interrogatories served them by Dow:

(b) For each product to which you claim you were exposed, state:

(1) The precise name.

(2) The quantity.

(3) A description of the product's container, by shape, size, color.

(4) A description of the product's container label by shape, size, color, and writing.

ANSWER: . . . .

CONTAINER AND LABEL:

Plaintiff recalls that the containers were medium in size. They were white in color. The Shell container had a yellow shell and word Nemagon; The Dow container had an insignia and the word Fumazone in red or blue lettering.

Shell contends in its brief that the December 1990 furnishing to plaintiffs of label information, including the Shell logo, prompted the modified and more detailed responses to Dow's interrogatories. Shell contends that no previous response mentioned the Shell trademark, that the term "Nemagon" is generic in nature, and that the term was commonly understood to include virtually all nematocides used during the subject time period in Costa Rica.

On February 14, 1991, Shell sought to stay plaintiffs' further discovery of packaging information through a protective order. Shell also attempted to quash the deposition of its employees with knowledge of package information. Shell contended that supplying further product identification data to plaintiffs would prejudice its defense of the case because plaintiffs' testimony would be affected or possibly tainted by access to specific containers and labels supplied by the defendant. Shell further sought to depose "*all* plaintiffs in this case and companion litigation . . . on product identification issues . . . at which time the plaintiffs could renotice this deposition and resubmit their Request for Production." Judge Smith decided to allow the course of discovery to proceed in the order noticed by the respective parties and denied Shell's motion by order dated March 26, 1991. He

further ordered Shell to produce label information in compliance with plaintiffs' additional document discovery requests and to respond to deposition questions regarding product identification.

The sole issue for our consideration is whether the trial court's election to proceed through discovery in the order requested by the parties constituted an abuse of discretion. Mandamus will issue only to correct the actions of a trial court when there has been a clear abuse of discretion or the violation of a duty imposed by law and when the relator has no adequate remedy on appeal. *Garcia v. Peeples*, 734 S.W.2d 343, 345 (Tex.1987, orig. proceeding); *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985); *Forscan Corporation v. Touchy*, 743 S.W.2d 722, 724 (Tex.App.—Houston [14th Dist.] 1987, orig. proceeding). A trial court's ruling on discovery matters in a mandamus action will not be overturned absent a showing of abuse of discretion. *Weisel Enterprises, Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex.1986).

The test we must apply to detect abuse of discretion by the trial court is not whether, in the opinion of this court, the facts present an appropriate case for the trial court's action. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Rather, the correct query is whether the trial court acted without reference to any guiding rules and principles. *Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 391, 133 S.W.2d 124, 126 (1939); *Clear Lake City Water Auth. v. Salazar*, 781 S.W.2d 347, 348 (Tex.App.—Houston [14th Dist.] 1989, orig. proceeding).

Shell's entire defense is based on its contention that Nemagon was never used by Standard Fruit Company employees at its Rio Frio plantation, and product identification by plaintiffs is therefore at the heart of this factual dispute. The record before us contains considerable conflicting evidence, but we may not consider such evidence and its relevance, for an appellate court may not consider disputed issues of fact in a mandamus proceeding. *Jampole v. Touchy*, 673 S.W.2d 569, 575 (Tex.1984, orig. proceeding); *West v. Solito*, 563 S.W.2d 240, 245 (Tex.1978, orig. proceeding) (and cases cited therein).

Shell contends that Judge Smith committed abuse of discretion in his denial of Shell's motion for protective order. The controlling rule reads in part:

**Protective Orders.** On motion specifying the grounds and made by any person against or from whom discovery is sought under these rules, the court *may* make any order in the interest of justice necessary to protect the movant from undue burden, unnecessary expense, harassment or annoyance, or invasion of personal, constitutional, or property rights.

Tex.R.Civ.P. 166b(5) (emphasis added). We believe it was intended by the promulgators of this rule that any of the means available to a court for controlling the sequence of discovery are *not mandatory*, but are to be applied within the trial judge's *discretion.* Trial courts possess great latitude with which to compel or deny discovery, and we recognize that a court's denial of a party's motion for protective order, absent a showing of undue burden, unnecessary expense, harassment, invasion of privilege or violation of a duty imposed by law will not constitute an abuse of discretion. *Barker v. Dunham*, 551 S.W.2d 41 (Tex.1977, orig. proceeding); *Clear Lake City Water Auth.*, 781 S.W.2d at 348.

A relator who bases his claim upon abuse of discretion in a discovery matter, and thereby seeks to overcome the ruling of a trial court, labors under a heavy burden. *R.J. Gallagher Co. v. White*, 709 S.W.2d 379, 381 (Tex.App.—Houston [14th Dist.] 1986, orig. proceeding). The relator must establish, under the circumstances of the case, that the facts and law permit the trial court to make *but one decision.* This determination is essential because mandamus will not issue to control the action of a lower court in a matter involving discretion. *Johnson,* 700 S.W.2d at 917.

In order to find abuse of discretion, a reviewing court must conclude that the facts and circumstances of the specific case *extinguish any discretion* in the matter. That cannot be the case where a trial court is empowered with discretion to grant or deny relief pursuant to the rules of discovery. *See Johnson,* 700 S.W.2d at 918. When this court reviews the trial court's exercise of that discretion, our task is to make an independent inquiry to determine whether the trial court's order is so arbitrary, unreasonable, or based upon so gross and prejudicial an error of law as to clearly establish abuse of discretion. *Id.* We are unable to detect any such acts by the trial court which might provide grounds upon which to grant mandamus. Our review of the actions of Judge Smith show that he sought only the expedient and efficient disposition of this discovery matter.

Shell contends that alternate discovery plans are available to the trial court and buttresses its argument with examples of court-crafted discovery plans from other jurisdictions. However, each case cited by relator stands for the proposition that a trial court's discretion will be upheld by an appellate court when exercise of that discretion *falls within the ambit of regulatory limitation.* This court cannot formulate a discovery plan and impose it upon the trial court. When, as in this discovery dispute, the matter is one requiring the true exercise of a trial court's discretion, an appellate court cannot substitute its judgment for that of the trial court. *Downer,* 701 S.W.2d at 242; *cf. Davis v. Huey,* 571 S.W.2d 859, 863 (Tex.1978).

The ultimate purpose of discovery is revelation of the truth so that disputes may be decided upon the basis of facts revealed and not by facts concealed. *Jampole,* 673 S.W.2d at 573. Consequently, the scope of discovery is not limited to evidence that would only be admissible at trial, but includes a significantly greater class of material. *Id.; Allen v. Humphreys,* 559 S.W.2d 798, 803 (Tex.1977, orig. proceeding). The trial court is empowered to use its discretion to narrow the scope of discovery on a case-by-case basis. Tex.R.Civ.P. 166b(5). In exercising that discretion the court is limited only by the rule that information sought must appear reasonably calculated to lead to the discovery of admissible evidence. Tex. R.Civ.P. 166b(2)(a). *See Axelson v. McIlhany,* 798 S.W.2d 550, 553 (Tex.1990).

Shell insists that the broad scope of discovery is limited by the legitimate interests of opposing parties, and a balancing of competing interests by the trial court is required. *See Jampole,* 673 S.W.2d at 573, citing *General Motors Corp. v. Lawrence,* 651 S.W.2d 732 (Tex. 1983, orig. proceeding). However, the interests to be considered by the trial court must fall within those delimited by Rule 166b and, as such, are confined to overbroad requests, harassment, disclosure of privileged information or other matter subject to the protections of subsection (5). *Id.* Shell has not demonstrated that such interests are endangered, but claims only that it will be compelled to assist plaintiffs in strengthening their case through the discovery process.

Shell also argues that it is entitled to a protective order because it has demonstrated "a particular, articulated and demonstrable injury, as opposed to conclusory allegations," necessary for issuance of such an order. *Garcia,* 734 S.W.2d at 345. When the discovery sought is within the scope of Rule 166b, a trial court may not grant a protective order when the party seeking protection has not met the burden of showing demonstrable injury. *Masinga v. Whittington,* 792 S.W.2d 940 (Tex.1990, orig. proceeding). However, *Garcia* holds that "[s]weeping predictions of injury and '[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning' do not justify a protective order." *Garcia,* 734 S.W.2d at 345, citing *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3rd Cir.1986).

Shell has demonstrated no more than that plaintiffs, when requested to describe the specific Shell label of the allegedly defective product, were able to point

out that the container displayed Shell's world famous logo. Based upon that single contention, this court is unable to detect demonstrable and prejudicial injury to relator. Because we find no clear abuse of discretion by Judge Smith in his decision to follow the course of discovery as requested by plaintiffs, we do not reach the issue of adequate remedy upon appeal. *Garcia*, 734 S.W.2d at 345. For all the reasons stated above, we cannot grant the relief sought by Shell.

Writ of mandamus is denied.

PAUL PRESSLER, J., not participating.