CLEAR LAKE CITY WATER AUTHORITY, David T. Riley, Robert T. Saveley, Frank Burnett, James R. Atkinson, Gayle I. Yoder, Donald J. Schelfhout and William E. Schweinle, Jr., Relators,

v.

Honorable Felix SALAZAR, Jr., Respondent.

No. B14–89–00302–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 12, 1989.

Rehearing Denied Nov. 9, 1989.

**348**

Barry Abrams, Ramon G. Viada, III, and Reginald H. Wood, Houston, for relators.

Charles W. Kelly and J. Douglas Sutter, Houston, for respondent.

Before MURPHY, SEARS and CANNON, JJ.

## OPINION

SEARS, Justice.

In this case of first impression we must decide whether the members of a water authority are susceptible to judicial inquiry into their subjective thought processes. We hold that they are not.

### I. BACKGROUND

Relators, officials of the Clear Lake City Water Authority, seek a writ of mandamus to compel the Honorable Felix Salazar, Jr. to replace his discovery order against them with a protective order precluding scrutiny of their thought processes. The real party in interest, Irving Kaplan, is the plaintiff in a tort action against relators. Kaplan's suit challenges the legality of certain administrative actions taken by the Authority in opposition to his request for various utility services. When Kaplan propounded deposition questions about relators' personal motivations and mental processes (asking *why* they acted as they did), their attorney objected on the grounds of legislative privilege. Judge Salazar denied their request for a protective order, and that denial is the subject of this mandamus proceeding.

Mandamus will issue to correct a clear abuse of discretion or the violation of a duty imposed by law where there is no other adequate remedy at law. *Garcia v. Peeples*, 734 S.W.2d 343 (Tex.1987). A trial court's ruling on discovery matters in a mandamus action will not be overturned absent a showing of abuse of discretion. *Weisel Enterprises, Inc. v. Curry*, 718 S.W.2d 56 (Tex.1986). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex.1985). Rather, it is a question of whether the court acted without reference to any guiding rules and principles. *Craddock v. Sunshine Bus*

*Lines,* 134 Tex. 388, 133 S.W.2d 124, 126 (Tex.Comm.App.1939, opinion adopted).

█ Further factual details may be found in *Kaplan v. Clear Lake City Water Auth.,* 794 F.2d 1059 (5th Cir.1986). There the Fifth Circuit affirmed a dismissal of federal and state claims by Kaplan against these same parties. The court held—on the basis of Texas law—that the Authority "does indeed possess limited legislative or quasi-legislative functions." The court went on to say: "Certainly, the allocation of limited capacity and the method by which new capacity is funded fall squarely within those types of legislative decisions committed to the Water Authority." *Id.* at 1064. Relators now cite this holding as res judicata on the question of whether the pertinent actions were legislative in character; because Kaplan is collaterally estopped from relitigating that issue, they continue, they need only establish the existence of a legislative privilege. We agree that the Fifth Circuit's decision is res judicata on the characterization of the Authority's actions as legislative, and we therefore turn to the matter of what privilege attaches, if any.

## II. LEGISLATIVE PRIVILEGE

Any privilege or immunity of one governmental department as against another implicates the doctrine of separation of powers. This doctrine derives from Article II, § 1 of the Texas Constitution:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one, those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.[1]

Article II, § 1 makes explicit what is implicit in the structure of the Texas Constitution, which allows a separate article for each of the three major branches of government.

In addition to articulating a general rule of separation, the Constitution states specific applications of that rule. *E.g.,* TEX. CONST. art. I, § 16 (prohibiting bills of attainder, *i.e.* legislative trials); art. III, § 14 (privileging legislators from arrest); art. V, § 3 (prohibiting issuance of a writ of mandamus against the governor). Relators invoke the Speech and Debate clause as authority for the relief sought here: Article III, § 21 provides that no member shall be questioned in any other place for words spoken in either house.

Relators also rely on judicial doctrine, court decisions which advance values specified in the text. Texas courts have indeed fashioned doctrine in support of the constitutional model of separated powers, despite the absence of an express command to do so. *See, e.g., Smith v. Davis,* 426 S.W.2d 827 (Tex.1968) (courts will presume legislative enactments are constitutional); *St. Louis Sw. Ry. v. State,* 113 Tex. 570, 261 S.W. 996 (1924) (courts will refuse to ren-

---

1. Although this provision is called § 1 of Article II, it is in fact *all* of Article II. No additional sections exist; no other part of the constitution warrants an entire article. This is not accidental, but intentional. When the Republic of Texas adopted its 1836 constitution, this principle appeared as Article I, § 1: "The powers of this government shall be divided into three departments, viz.: legislative, executive, and judicial, which shall remain for ever separate and distinct."

It remained there until Texas took on statehood in 1845, at which time the Bill of Rights emerged as Article I, displacing the command of separation into the location it has occupied ever since.

The current prominence of the Bill of Rights in no way denigrates the status of the principle of separation. Liberties are safest, not when a piece of paper says so, but rather when the government—the instrument most threatening to those liberties—is broken into separate branches: "Without a secure structure of separated powers, our Bill of Rights would be worthless, as are the bills of rights of many nations of the world that have adopted, or even improved upon, the mere words of ours." *Morrison v. Olson,* 487 U.S. 654, 108 S.Ct. 2597, 2622, 101 L.Ed.2d 569 (1988) (Scalia, J., dissenting).

der advisory opinions). In this case relators urge application of the rule recognized in *Sosa v. City of Corpus Christi,* 739 S.W.2d 397 (Tex.App.—Corpus Christi 1987, no writ). That court held that the "individual knowledge, lack of knowledge, understanding, or thought process of any individual member of a governmental body such as a city council have no bearing upon the validity of the action taken by the body." *Id.* at 404. Accordingly, the court concluded, "public policy dictates that individual legislators be incompetent witnesses regarding a law enacted by the legislature as a body. Legislators' hands must not be bound by a possibility of being haled into court to testify any time a legislative action is questioned." *Id.* at 405.

■ Applying these principles, we hold that an immunity attaches to relators in regard to their subjective mental processes. The Authority exists by express command of the Constitution. Art. XVI, § 59(a). As such, it stands on the same footing as other political subdivisions established by law. *See Willacy Cty. Water Cont. & Imp. Dist. No. 1 v. Abendroth,* 142 Tex. 320, 177 S.W.2d 936, 937 (1944). It simply is not consonant with our scheme of government for a court to inquire into the motives of legislators. *See Tenney v. Brandhove,* 341 U.S. 367, 377, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951) (applying the federal Speech and Debate clause's policy to state legislators); *Ligon v. Maryland,* 448 F.Supp. 935, 947 (D.Md.1977) (involving land use controls).

This conclusion is bolstered by the Texas Supreme Court's extension of immunity beyond members of the state legislature to the House sergeant-at-arms. *Canfield v. Gresham,* 82 Tex. 10, 17 S.W. 390 (1891); *see also Kilbourn v. Thompson,* 103 U.S. 168, 26 L.Ed. 377 (1880) (same). Moreover, other jurisdictions have likewise extended the immunity to local governmental officers, reasoning by analogy to the *Tenney* case. *E.g., Timber Prop. v. Township of Chester,* 205 N.J.Super. 273, 500 A.2d 757 (1984); *Felder v. Foster,* 71 A.D.2d 71, 421 N.Y.S.2d 469 (1979); *see also Searingtown Corp. v. Incorporated Village of North Hills,* 575 F.Supp. 1295 (E.D.N.Y.1981) (finding privilege from discovery a corollary to immunity from suit).

A contrary result would not only violate the general rule of Article II, § 1, the specific rule of the Speech and Debate clause, and the holding of *Sosa v. City of Corpus Christi,* but it would also prove an extremely difficult doctrine to contain. No limiting principle would prevent the spread of intergovernmental inquisition to other situations. A court has no more authority to investigate the motives of local legislators than that legislative body has to regulate our deliberations in conference or ask why we ruled a certain way in a given case. "Like any privilege, the one the speech and debate clause grants ... would be virtually worthless if courts judging its applicability had to scrutinize closely the acts ostensibly shielded. Judicial consideration of alleged improper motivation is thus necessarily an inappropriate mode of analysis for determining the limits of legislative immunity." L. TRIBE, AMERICAN CONSTITUTIONAL LAW 372 (2d ed. 1988) (footnote omitted). Indeed, unlike appellate courts, which must explain the reasons for their decisions pursuant to TEX.R.APP.P. 90(a), legislators need not give—or even have—an explanation. *Cf. Sable Comm. v. F.C.C.,* —— U.S. ——, 109 S.Ct. 2829, 2840, 106 L.Ed.2d 93 (Scalia, J., concurring) ("Neither due process nor the First Amendment requires legislation to be supported by committee reports, floor debates, or even consideration, but only by a vote.")

### III. WAIVER

Kaplan argues in the alternative that relators waived whatever privilege might exist, because of certain deposition testimony here and in prior litigation. *See Clear Lake City Water Auth. v. Winograd,* 695 S.W.2d 632 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). After review of the proffered excerpts we find no such waiver. First, the basis of the dispute in *Winograd* differs sufficiently from the one before us to warrant the conclusion that any waiver there does not carry over to this case. Second, the privilege is a personal one

which cannot be imputed to all officials of a governmental body merely on the basis that one or two members waived it. Finally, inspection of the cited testimony does not persuade us that a waiver has occurred at all.

In summary, we find that relators are entitled to protection from judicial interrogation about their subjective mental processes.

We hold that the trial court abused its discretion in denying the motion for protective order. The writ of mandamus is conditionally granted. Because we are confident the trial court will comply with this opinion, the writ will issue only if respondent declines to do so.