IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-60271
_____

CITIZENS FOR GOOD GOVERNMENT,

Plaintiff-Appellant,

versus

CITY OF QUITMAN, MISSISSIPPI;
CITY OF QUITMAN, MISSISSIPPI
DEMOCRATIC EXECUTIVE COMMITTEE;
CITY OF QUITMAN, MISSISSIPPI
ELECTION COMMISSION,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
_____

July 24, 1998

Before DAVIS, EMILIO M. GARZA, and BENAVIDES, Circuit Judges:

PER CURIAM:

After finding that the City of Quitman ("the City" or "Quitman") had violated Section 2 of the Voting Rights Act by electing its five alderman from at-large districts, the district court entered a decree ordering that the City's alderman be elected from four single-member districts and one at-large district "unless and until the City of Quitman adopts and effectuates another method of election." We reverse and remand. On remand, the district court must either articulate a sufficiently "singular combination of unique factors" justifying the inclusion of an at-large district in its redistricting plan, *Mahan v. Howell*, 410 U.S. 315, 333 (1973), or enter a decree redistricting

Quitman into five single-member districts.

I.

In 1993, the plaintiff, Citizens for Good Government ("Citizens"), brought suit against Quitman arguing that the City's method of electing its alderman from five at-large districts violated the Voting Rights Act. The complaint sought preliminary and permanent injunctive relief and a court order redistricting Quitman into five single-member districts. The district court granted Citizens' request for a preliminary injunction and enjoined the upcoming 1993 alderman elections.

In response to the issuance of the preliminary injunction, the City and Citizens began negotiating a permanent redistricting plan for Quitman. Consistent with Mississippi law, the parties agreed to a redistricting plan that provided for four single-member districts and one at-large district ("the City's 4-1 plan"). *See Stewart v. Waller*, 404 F. Supp. 206, 213-15 (N.D. Miss. 1975) (reinstating Miss. Code Ann. § 3374-36 (1942), which authorizes alderman to be elected from five at-large districts or four single-member districts and one at-large district). The parties then submitted this plan to the Attorney General for preclearance. The Attorney General, however, objected to the redistricting plan, and Citizens' dilution claim under the Voting Rights Act was subsequently tried before the district court.

After a bench trial, the district court concluded that the City's system of electing its five alderman from at-large districts violated Section 2 of the Voting Rights Act.[1] The Court then provided the City with another opportunity to collaborate with Citizens and develop a redistricting plan for the upcoming 1997 alderman elections. In light of the Attorney General's objection to their prior plan, the parties jointly declined this opportunity to negotiate another redistricting plan. Left

---

[1] The City does not contest the validity of this finding on appeal.

2

with no choice but to fashion its own redistricting plan, the district court appointed a special master to devise a redistricting plan "in order that the elections scheduled for May 6, 1997 (and with a candidate qualifying deadline of April 4, 1996), may ensue."

The special master recommended a redistricting plan that provided for one at-large district and four single-member districts ("the special master's 4-1 plan"). Notwithstanding its recognition that the Supreme Court has expressed a "preference for utilization of single-member districts in court-ordered remedial plans," the district court adopted the special master's plan "in order that the upcoming 1997 City elections may proceed in accordance with this plan."

Following the entry of this order, Citizens filed a motion requesting the district court to clarify the interim nature of the special master's 4-1 plan and to order the City to submit a permanent redistricting plan to the Attorney General for preclearance. In response, the City indicated that it had no intention of drafting another redistricting plan and argued that the redistricting plan utilized for the 1997 elections should accordingly be made permanent. On April 9, 1997, the district court entered an order adopting the special master's 4-1 plan as the redistricting plan that will govern the election of alderman in Quitman until the City devises a new plan that is approved by the Attorney General. Citizens then filed this appeal.

II.

On appeal, Citizens argues that the district court erred by failing to order the City to adopt a new redistricting plan and submit it to the Attorney General for preclearance. In addition, Citizen contends that the district court's redistricting plan is defective because the at-large seat is not justified by a "singular combination of unique factors." In response, the City argues that it cannot be forced to draft a redistricting plan and that the district court is responsible for creating such a plan because

3

the City declined the district court's invitation to do so. The City also contends that Citizens is estopped from contesting the validity of the at-large seat because it had previously agreed to a redistricting plan that included one at-large seat. Finally, the City claims that the district court correctly determined that the special master's 4-1 plan is justified by special circumstances.

A.

Citizens' contention that the district court erred by not ordering Quitman to develop a redistricting plan and submit it to the Attorney General for preclearance misconceives the principles of federalism at play in this case. Redistricting is a legislative function "'which the federal courts should make every effort not to preempt.'" *Ramos v. Koebig*, 638 F.2d 838, 843 (5th Cir. 1981) (quoting *Wise v. Lipscomb*, 437 U.S. 535, 539 (1978)). Citizens, however, seeks to turn this rule of comity on its head by invoking it as a justification for a district court order directing a state or local government to draft a redistricting plan when a district court has found an existing plan to be unlawful. Rather than issue such an order, a district court must give a legislative body "an opportunity to enact" an acceptable plan. *Mississippi Chapter, Operation PUSH, Inc. v. Mabus*, 932 F.2d 400, 406 (5th Cir. 1991); *see Lawyer v. Department of Justice*, 117 S. Ct. 2186, 2192-93 (1997); *McDaniel v. Sanchez*, 452 U.S. 130, 150 n.30 (1981). If a "governmental body is unable or unwilling to fulfill its legislative duties" by accepting the district court's invitation to develop a redistricting plan and submit it to the Attorney General for preclearance, then it "become[s] the `unwelcome obligation' of the [district] court to devise and impose a plan." *Ramos*, 638 F.2d at 843; *see Lawyer*, 117 S. Ct. at 2192-93; *McDaniel*, 452 U.S. at 150 n.30.

In this case, the district court provided Quitman with two opportunities to draft a redistricting plan. After issuing a preliminary injunction, the district court gave the City an opportunity to develop

4

a redistricting plan. The City availed itself of this opportunity, but the Attorney General did not preclear its 4-1 plan. Likewise, after the district court held that Quitman's use of five at-large alderman districts violated Section 2 of the Voting Rights Act, it provided the City with another opportunity to devise a legislative redistricting plan. The City, however, declined to submit another redistricting plan because it believed that any 4-1 plan that it was authorized to develop under Mississippi law would again be rejected by the Attorney General. Under these circumstances, the district court properly appointed a special master to devise a judicial redistricting plan and did not err by refusing to order Quitman to develop another plan and to submit it to the Attorney General for preclearance.

B.

According to the City, Citizens is estopped from challenging the inclusion of the at-large seat in the judicial redistricting plan because it failed to object to the special master's 4-1 plan when it was proposed. This contention reflects a misunderstanding of the differences between interim and permanent judicial redistricting plans. As the district court's order appointing the special master indicates, the special master's 4-1 plan was initially adopted as an interim measure to govern the upcoming alderman elections. Under these circumstances, the inclusion of an at-large seat in the special master's interim judicial redistricting plan may have been permissible. *See Howell*, 410 U.S. at 333; *Corder v. Kirksey*, 639 F.2d 1191, 1195 (5th Cir. 1981) ("*Corder* III") (noting that the "short time" a district court possesses "to fashion a fair remedy in the face of an impending election" might justify using an at-large district in an "interim" judicial redistricting plan). As Citizens correctly argued before the district court, however, this justification for the special master's 4-1 plan did not provide the court with a basis for departing from the preference for single-member districts when

5

fashioning a permanent judicial remedy. Citizens, therefore, is not estopped from challenging the inclusion of an at-large seat in the permanent judicial redistricting plan simply because it did not object to the use of such a seat in an interim remedial plan.

C.

We turn now to the heart of Citizens' appeal, which is its claim that the district court abused its discretion, *East Carrol Parish Sch. Bd. v. Marshall*, 424 U.S. 636, 639-40 (1976), by adopting a permanent redistricting plan that included an at-large district. Although we review for an abuse of discretion, the district court's discretion to depart from the longstanding general rule that single-member districts are to be used in judicially crafted redistricting plans, *see, e.g.*, *Connor v. Finch*, 431 U.S. 407, 415 (1977); *East Carrol Parish Sch. Bd.*, 424 U.S. at 639; *Chapman v. Meier*, 420 U.S. 1, 18 (1975); *Howell*, 410 U.S. at 333, is quite limited. Only if the district court has identified a "singular combination of unique factors," *Howell*, 410 U.S. at 333, justifying the abandonment of this clear preference for single-member districts, will its decision be upheld. *Corder* III, 639 F.2d at 1195. Accordingly, we now consider the sufficiency of the district court's explanation of why this case presents "rare" or "exceptional" circumstances "allowing for a court-fashioned election scheme incorporating an at-large element." *Id.*

In its April 9th order adopting the special magistrate's 4-1 plan as the redistricting plan to remain in effect until the City secures federal approval for a new plan, the district court did not identify any factors favoring the inclusion of an at-large district in this permanent remedial plan. This alone would normally mandate a remand. *See Corder v. Kirksey*, 585 F.2d 708, 715 (5th Cir. 1978) ("*Corder* I"). We will assume, however, that the April 9th order incorporated the district court's reasons for adopting the special magistrate's 4-1 plan as an interim redistricting plan. As noted

6

above, the district court believed that the use of an at-large district was justified because the parties had earlier agreed to the inclusion of such a district in the City's 4-1 plan. In addition, the City contends that a special circumstance is presented by this case because Mississippi law has traditionally authorized a city like Quitman to elect its alderman from four single-member districts and one at-large district.

We pause briefly to explain why these two circumstances provide insufficient support for the inclusion of an at-large district in a permanent redistricting plan. First, the agreement of the parties when formulating a legislative redistricting plan has no bearing on the propriety of including an at-large seat in a judicially crafted redistricting plan. "In contrast [to "court-ordered plans"], reapportionment plans prepared by legislative bodies may employ multimember [or at-large] districts." *McDaniel*, 452 U.S. at 139; *see Westwego Citizens for Better Gov't v. Westwego*, 872 F.2d 1201, 1204 (5th Cir. 1989) (noting that "at-large voting schemes" are not "per se violations of section 2"); *Corder* III, 639 F.2d at 1194 ("It is clear that an at-large election scheme is not a per se unconstitutional dilution of minority votes."). Second, that Mississippi law has traditionally authorized Quitman to utilize four single-member districts and one at-large district does not, when standing alone, rise to the level of a special circumstance justifying the use of an at-large district in a judicial redistricting plan. In order for an at-large district to be used in Quitman, the district court must, for example, explain why compliance with Mississippi law "would better serve the values of fair representation and political access," *Wallace v. House*, 538 F.2d 1138, 1144 (5th Cir. 1976), or why the use of five single-member districts would be "impractical" and why compliance with the State's authorization of a 4-1 plan "makes good sense" in light of the structure and function of the board of alderman, the duties that alderman are elected to perform, and the interests each alderman

7

is elected to represent, *see Corder* III, 639 F.3d at 1195-96 (approving a 4-1 judicial redistricting plan for the Pickens County School Board because the four alderman elected from single-member districts each represented one of Pickens County's four high schools, Alabama had a longstanding policy favoring the use of five-member school boards because of their "structural desirability," and the use of five single-member districts would be impractical and would distort the equality of representation for each high school under the 4-1 plan); *cf. Dillard v. Crenshaw County*, 831 F.2d 246, 250-53 (11th Cir. 1987) (rejecting the claim that the responsibilities of the chairperson of the Calhoun County Commission were sufficiently distinct from those of the associate commissioners to justify continuing the traditional practice of electing the chairperson from an at-large district). The district court, however, made no findings relating to the desirability of adhering to Mississippi law when it adopted the special master's 4-1 plan. Further, the City's cryptic reference to "sound public policy considerations" as a justification for the at-large district is insufficiently tied to the specific public policy needs of Quitman to justify the district court's inclusion of this district in its permanent redistricting plan.

III.

For the foregoing reasons, we REVERSE the district court's decision to adopt a permanent redistricting plan including an at-large district and REMAND this case for further proceedings. On remand, the district court must either sufficiently articulate the relevant unique circumstances justifying the inclusion of an at-large seat in its redistricting plan or enter an order dividing Quitman into five single-member districts.