In re Rick PERRY, in his official capacity as Governor of The State of Texas, and Henry Cuellar, in his official capacity as Secretary of State of The State of Texas, Relators.

No. 01–0979.

Supreme Court of Texas.

Argued Oct. 17, 2001.

Decided Oct. 22, 2001.

Andy Taylor, Locke Liddell & Sapp, John Cornyn, Atty. Gen., Julie Caruthers Parsley, Office of Solicitor Gen., Philip A. Lionberger, Lisa Royce Eskow, Office of Atty. Gen., C. Robert Heath, David Mendez, Bickerstaff Heath Smiley Pollan Kever & McDaniel, Jill Warren, Office of Atty. Gen., Jan Soifer, Locke Liddell & Sapp, Austin.

Justice O'NEILL delivered the opinion of the Court.

When the Texas Legislature adjourned without enacting redistricting plans for the Texas Senate and Texas House of Representatives, that responsibility was constitutionally delegated to the Legislative Redistricting Board ("LRB"). TEX. CONST. art. III, § 28. The LRB accordingly formulated senate and house redistricting plans, which various parties have challenged in the Travis County district court. This mandamus proceeding arises out of the plaintiffs' attempt to depose three members of the LRB and their aides regarding their "consideration of and/or formulation of" those redistricting plans. We must decide whether legislative immunity protects the LRB members and their aides from the plaintiffs' requested discovery. We hold that the LRB members, in apportioning legislative districts pursuant to constitutional mandate, were acting in a legislative capacity and are cloaked, as are their aides, with legislative immunity. We also hold that this immunity encompasses an evidentiary and testimonial privilege, which the plaintiffs have failed to overcome by demonstrating extraordinary circumstances that arguably might warrant an exception. Accordingly, the trial court abused its discretion in denying the LRB members' motion to quash. Because the relators have no adequate remedy by appeal, we conditionally issue the writ of mandamus.

## I. Background

The Texas Constitution requires the Legislature to apportion the state into senatorial and representative districts after each United States decennial census. TEX. CONST. art. III, § 28. Section 28 mandates that the Legislative Redistricting Board shall make such an apportionment if the Legislature fails to do so. Id. The LRB constitutionally comprises five members, the Lieutenant Governor, the Speaker of the House of Representatives, the Attorney General, the Comptroller of Public Accounts, and the Commissioner of the General Land Office. Id. Once executed and filed with the Secretary of State, the LRB's apportionment "shall have force and effect of law." Id.

The 77th Legislature adjourned sine die without enacting a redistricting plan. Accordingly, that task fell to the LRB, which convened and adopted a redistricting plan. Thirteen Texas residents [1] filed this suit alleging that the LRB's plan is constitutionally and statutorily infirm and re-

---

1. The plaintiffs are David Brown, David O. Zambrano, Joy Smith, Vivian Harris, Tony Campos, Ed Gonzales, Margaret P. Rodri-guez, Michael Moon, Dan Pedroza, Pauline Dixon, Raphael Quintanilla, Hargie Faye Savoy, and Ralph McCloud.

questing court intervention to protect their constitutional and voting rights. The plaintiffs sought to depose three board members and their chief legislative aides: (1) Attorney General John Cornyn, and his aide, Special Attorney General John Greytok; (2) Comptroller Carole Keeton Rylander, and her aide, Tracy Wurzel, Manager of the Legislative Analysis Group of the Comptroller of Public Accounts; and (3) Land Commissioner David Dewhurst, and his aide, Chief Clerk/Deputy Land Commissioner Larry Soward. The deposition notices seek documents and testimony regarding

> all data entries, plans, partial plans and calculations performed on or in connection with the State of Texas "Red Apple" redistricting system/program, that relate to [sic] any manner to the consideration of and/or formulation of redistricting plans for the Texas Senate and the Texas House of Representatives.

The relators, Governor Rick Perry and former Secretary of State Henry Cuellar, filed motions to quash the deposition notices, contending that legislative immunity absolutely shields the LRB members and their aides from discovery in this matter. The trial court denied the motion, and the relators sought mandamus relief from the court of appeals. The court of appeals denied their mandamus petition on October 5, 2001. The relators now seek mandamus relief in this Court.

## II. Discussion

■ Texas and federal courts have recognized that individuals acting in a legislative capacity are immune from liability for those actions. *See, e.g., Bogan v. Scott–Harris,* 523 U.S. 44, 46, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998); *Camacho v. Samaniego,* 954 S.W.2d 811, 823–24 (Tex.App.—El Paso 1997, pet. denied). The legislative immunity doctrine is deeply embedded in Anglo American law, serving to encourage free and open debate. *See Bogan,* 523 U.S. at 52, 118 S.Ct. 966. The doctrine is not intended to protect individual legislators, but instead serves the public's interests. *Tenney v. Brandhove,* 341 U.S. 367, 373–74, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). The United States Supreme Court has articulated the critical concerns that underlie the doctrine:

> [T]he threat of liability can create perverse incentives that operate to *inhibit* officials in the proper performance of their duties. In many contexts, government officials are expected to make decisions that are impartial or imaginative, and that above all are informed by considerations other than the personal interests of the decisionmaker. Because government officials are engaged by definition in governing, their decisions will often have adverse effects on other persons. When officials are threatened with personal liability for acts taken pursuant to their official duties, they may well be induced to act with an excess of caution or otherwise to skew their decisions in ways that result in less than full fidelity to the objective and independent criteria that ought to guide their conduct.

*Forrester v. White,* 484 U.S. 219, 223, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (emphasis in original).

Legislative immunity derives largely from the Speech and Debate Clauses of the Texas and federal constitutions, which, in turn, embody fundamental separation-of-powers tenets. *See* U.S. CONST. art. I, § 6; TEX. CONST. art. III, § 21; *United States v. Johnson,* 383 U.S. 169, 178–82, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966); *Clear Lake City Water Auth. v. Salazar,* 781 S.W.2d 347, 350 (Tex.App.—Houston [14TH Dist.] 1989, orig. proceeding). The legislative immunity doctrine recognizes

that it is " 'not consonant with our scheme of government for a court to inquire into the motives of legislators.' " *Bogan,* 523 U.S. at 55, 118 S.Ct. 966 (quoting *Tenney,* 341 U.S. at 377, 71 S.Ct. 783); *see also Clear Lake City Water Auth.,* 781 S.W.2d at 350. Because the immunity doctrine serves important public purposes, courts have affirmed that the doctrine generally shields legislative actors not only from liability, but also from being required to testify about their legislative activities. *See, e.g., Gravel v. United States,* 408 U.S. 606, 615–16, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972) (holding that senator could not be made to answer questions about events that occurred in senate subcommittee meeting); *Dombrowski v. Eastland,* 387 U.S. 82, 85, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) (noting that legislators "should be protected not only from the consequences of litigation's results but also from the burden of defending themselves"); *Schlitz v. Virginia,* 854 F.2d 43, 46 (4th Cir.1988) (holding that legislator could not be required to testify about matters of legislative conduct); *Miller v. Transamerican Press, Inc.,* 709 F.2d 524, 529 (9th Cir. 1983) (holding that former congressman could not be required to testify about his legislative activities); *Clear Lake City Water Auth.,* 781 S.W.2d at 349–50 (holding that members of water authority could not be questioned about legislative activities).

■■■■ Courts have extended the legislative immunity doctrine beyond federal and state legislators to other individuals performing legitimate legislative functions. *See, e.g., Bogan,* 523 U.S. at 55, 118 S.Ct. 966 (applying legislative immunity doctrine to mayor and city council vice-president); *Supreme Court of Va. v. Consumers Union of the United States,* 446 U.S. 719, 734, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980) (applying legislative immunity doctrine to state supreme court and its chief justice

for their action in promulgating code of professional responsibility); *Clear Lake City Water Auth.,* 781 S.W.2d at 349–50 (applying legislative immunity doctrine to local water authority). Whether the function the actor performs is legislative depends upon the nature of the act. *Bogan,* 523 U.S. at 54, 118 S.Ct. 966; *Bowles v. Clipp,* 920 S.W.2d 752, 758 (Tex.App.— Dallas 1996, writ denied). An action is legislative in nature when it reflects a discretionary, policymaking decision of general application, rather than an individualized decision based upon particular facts. *Bogan,* 523 U.S. at 55–56, 118 S.Ct. 966; *Bryan v. City of Madison,* 213 F.3d 267, 273–74 (5th Cir.2000); *Cutting v. Muzzey,* 724 F.2d 259, 261 (1st Cir.1984); *Bowles,* 920 S.W.2d at 758.

■■■■ We have no doubt that the LRB members were acting in a legislative capacity when they apportioned senatorial and representative districts pursuant to constitutional mandate. Under our Constitution, the LRB effectively stepped into the Legislature's shoes after that body failed to act. *See* Tex. Const. art. III, § 28. Moreover, our Constitution specifically provides that the LRB's apportionment "shall have force and effect of law." *Id.* No act is more fundamentally legislative than lawmaking itself. *See Bogan,* 523 U.S. at 55, 118 S.Ct. 966 (referring to act of voting for an ordinance as "quintessentially legislative"). Thus, under our constitutional scheme, redistricting is clearly a legislative function. *Citizens for Good Gov't v. City of Quitman, Miss.,* 148 F.3d 472, 475 (5th Cir.1998) (citing *Ramos v. Koebig,* 638 F.2d 838, 843 (5th Cir. 1981)). And when a person acts as a legislator, legislative immunity extends to the legislator's aides because their assistance is "so critical to the [legislator's] performance that they must be treated as the latter's alter egos" to avoid thwarting

the purposes legislative immunity furthers. *Gravel,* 408 U.S. at 616–17, 92 S.Ct. 2614. Accordingly, we hold that legislative immunity applies to the activities of the LRB's members and their aides in developing a redistricting plan.

■ Relators contend that, once we have determined that legislative immunity applies, the immunity is absolute and without exception. There are cases that arguably support that contention, at least so far as immunity from liability is concerned. *See, e.g., Bogan,* 523 U.S. at 52, 118 S.Ct. 966 (holding that local legislators are immune from liability under 42 U.S.C § 1983 regardless of their subjective intent); *Supreme Court of Va.,* 446 U.S. at 738, 100 S.Ct. 1967 (holding that Virginia Supreme Court and its chief justice were absolutely immune from liability for attorneys' fees under section 1983 when they acted in legislative capacity). But other authority suggests that a legislator's testimonial privilege may be subject to limited, very closely guarded exceptions when invidious legislative intent is an element of a cause of action. *See Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 268, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Marylanders for Fair Representation, Inc. v. Schaefer,* 144 F.R.D. 292, 301 n. 19, 305 (D.Md.1992).

In *Arlington Heights,* the Supreme Court discussed the type of proof required to establish an Equal Protection violation. To show an Equal Protection violation, proof of racially discriminatory intent is required. *Arlington Heights,* 429 U.S. at 265, 97 S.Ct. 555. The Court noted that "determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.* at 266, 97 S.Ct. 555. For example, "an important starting point" may be the official action's impact

and "whether it 'bears more heavily on one race than another.' " *Id.* (quoting *Washington v. Davis,* 426 U.S. 229, 242, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)). And if impact alone is not determinative, the court may look to other evidence, such as the decision's historical background, the sequence of events leading up to the action, departures from procedural and substantive norms, and legislative history, including decisionmakers' contemporaneous statements, meeting minutes, and reports. *Id.* at 266–68, 96 S.Ct. 2040. But only in "extraordinary instances" may legislative members be called to testify concerning the official action's purpose, and "even then such testimony frequently will be barred by privilege." *Id.* at 268, 96 S.Ct. 2040. That is because

judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government. Placing a decisionmaker on the stand is therefore "usually to be avoided."

*Id.* at 268 n. 18, 96 S.Ct. 2040 (quoting *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)).

Thus, *Arlington Heights* suggests that there could be a circumstance, albeit extraordinary, that might constrict the grant of legislative immunity when, as in this case, a plaintiff alleges that the action violates the Equal Protection Clause. *See also Marylanders,* 144 F.R.D. at 304–05 (permitting depositions of three members of redistricting committee). But whether or not legislative immunity is absolute, as relators contend, or subject to limited exception, as *Arlington Heights* suggests, plaintiffs have articulated no basis for restricting legislative immunity in this case. At a minimum, *Arlington Heights* suggests that all other available evidentiary sources must first be exhausted before extraordi-

nary circumstances will be considered. In this case, the plaintiffs have alternative information sources available. For example, the LRB's meetings have been transcribed, and a wide array of documentary information has been provided to the plaintiffs, including materials the State of Texas submitted to the Department of Justice to support preclearance under section 5 of the Voting Rights Act, 42 U.S.C. § 1973c. The plaintiffs have neither alleged nor demonstrated any extraordinary circumstance that might justify what would appear to be an almost unprecedented incursion into legislative immunity.

To support their position, the plaintiffs cite a number of cases in which officials have testified about redistricting efforts. *See Seamon v. Upham,* 536 F.Supp. 931 (E.D.Tex.1982); *Graves v. Barnes,* 343 F.Supp. 704 (W.D.Tex.1972); *Bush v. Martin,* 251 F.Supp. 484 (S.D.Tex.1966). But legislative immunity, like other privileges, may be waived. *Burtnick v. McLean,* 76 F.3d 611, 613 (4th Cir.1996). There is no indication in the cases the plaintiffs rely upon that legislative immunity was not voluntarily waived.[2] Here, there has been no waiver of legislative immunity. Accordingly, on this record, the LRB members and their aides are entitled to the doctrine's protection.

### III.  Conclusion

 We hold that the trial court abused its discretion in denying the relators' motion to quash. A party has no adequate remedy by appeal when the trial court erroneously orders the disclosure of privileged information. *TransAmerican Natural Gas Corp. v. Flores,* 870 S.W.2d 10, 12

(Tex.1994). We therefore conditionally issue the writ of mandamus.

---

**2.**  Our research has revealed only one instance in which a person acting in a legislative capacity has been compelled to testify. *See Marylanders,* 144 F.R.D. at 304–05 (allowing depositions of private citizen members of Governor's Advisory Committee on redistricting). We do not find this isolated case persuasive.