**Jim CUNNINGHAM, Sr., Plaintiff**

v.

**CHAPEL HILL, ISD, Defendant.**

**No. 6:06CV69.**

United States District Court,
E.D. Texas,
Tyler Division.

July 18, 2006.

Charles Homer Clark, Gregory Scott Porter, Clark Lea & Ainsworth, Tyler, TX, for Plaintiff.

W. Andrew Messer, The Messer Law Firm, Frisco, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

Before the Court is Defendant Chapel Hill Independent School District's ("CHISD") Motion for Protective Order and to Quash Deposition Notice of School Board of Trustee with Supporting Brief (Docket No. 36). For the reasons stated below, CHISD's motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

On August 3, 2005 the Maintenance Department of CHISD was reorganized resulting in the elimination of Plaintiff Jim Cunningham, Sr.'s ("Cunningham") position as the Director of Maintenance. Cunningham was subsequently reassigned to a position at an individual school campus. On August 4, 2005, Cunningham resigned his employment from CHISD. After his resignation, Cunningham utilized CHISD's grievance system and filed grievances at Levels I, II and III requesting, in part, that the Maintenance Department be returned to its previous form. On September 19, 2005, the Board of Trustees of CHISD convened in a regular session at which Cunningham was heard on his Level III grievance. In a vote of 6–0, the Board denied Cunningham's grievance and affirmed the reorganization of the Maintenance Department. Cunningham brought this suit against CHISD alleging violations of the First Amendment and the Texas Whistleblower Act claiming that the reorganization of the Maintenance Department and his subsequent reassignment were in retaliation for comments he made about CHISD's Superintendent Joe Stubblefield ("Stubblefield").

Cunningham noticed the depositions of Stubblefield and Board of Trustee Rickey Mosely ("Mosely") to be held on Thursday, June 29, 2006. CHISD filed this motion in response to Mosely's notice of deposition arguing that Mosely could not be deposed because he holds a testimonial privilege arising from the doctrine of legislative immunity. CHISD contends that legislative immunity and the testimonial privilege apply to all trustees of the CHISD Board of Trustees. On the morning of June 29, 2006, the Court held a hearing to address CHISD's motion. After hearing oral argument from both parties, the Court took the motion under advisement and instructed the parties to go forward with the deposition of Mosely later that afternoon. However, the Court indicated that Mosely did not have to answer any questions related

to the September 19, 2005 session that might be considered privileged.

## LEGISLATIVE IMMUNITY

### Applicable Law

The Speech and Debate Clause of the United States Constitution states that "for any Speech or Debate in either House, [members of Congress] shall not be questioned in any other place." U.S. Const., Art. I, § 6. The Supreme Court has unequivocally interpreted the Speech and Debate Clause to provide an absolute legislative immunity from liability under § 1983 for state, regional, and local legislators regarding "all actions taken 'in the sphere of legitimate legislative activity.'" *See Bogan v. Scott–Harris* 523 U.S. 44, 53–54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). However, neither the Supreme Court nor the Fifth Circuit have directly addressed whether a testimonial privilege arises from the doctrine of legislative immunity as it applies to state, regional, or local legislators.

### The Testimonial Privilege Under the Doctrine of Legislative Immunity

Cunningham argues that he should be permitted to depose Mosely and the other trustees of the CHISD Board with regard to their decisions to ratify the reorganization of the Maintenance Department and to deny Cunningham's Level III grievance. Cunningham bases his argument on the premise that one of the elements of his cause of action requires him to prove that his speech was a substantial and motivating factor behind the Board's decisions. Cunningham contends that he cannot prove this element without deposing Mosely or other trustees regarding the Board's motivations for making these decisions.[1] CHISD contends that a testimonial privilege is inherent to the doctrine of legislative immunity and applies to Mosely and the other trustees, protecting them from having to testify about their legislative activities.

Although no Supreme Court or Fifth Circuit decision directly addresses whether a testimonial privilege arising from the doctrine of legislative immunity applies to local legislators, the Supreme Court has recognized the privilege as it applies to other legislative actors and has alluded that the privilege is inherent to the doctrine of legislative immunity. In *Eastland v. U.S. Servicemen's Fund,* while discussing that the objective of the Speech and Debate Clause is to maintain legislative independence, the Supreme Court explained:

> Just as criminal prosecution infringes upon the independence which the Clause is designed to preserve, a private civil action, whether for an injunction or damages, creates a distraction and forces Members to divert their time, energy, and attention from their legislative tasks to defend the litigation. Private civil actions also may be used to delay and disrupt the legislative func-

---

1. Cunningham heavily relies on an unpublished opinion in which an Illinois District Court stated that the testimonial privilege does not apply in cases where the plaintiff must prove that the defendant's employment decision was motivated by plaintiff's exercise of his First Amendment rights. *See Trombetta v. Bd. of Educ., Proviso Twp. High Sch. Dist. 209,* No. 02 C 5895, 2004 WL 868265, 2004 U.S. Dist. Lexis 6916 (N.D.Ill. Apr. 22, 2004). In *Trombetta,* the court held that the board members attempting to invoke the testimonial privilege under the doctrine of legislative immunity waived any such privilege by allowing their depositions to be taken on possibly privileged material during discovery. 2004 WL 868265 at *4–5, 2004 U.S. Dist. Lexis 6916 at *12–13. The court readily admitted that the analysis Cunningham so heavily relies on was based on the court's "quick review" of the cases submitted by the parties. *See id.* 2004 WL 868265 at *5, 2004 U.S. Dist. Lexis 6916 at *14.

tion. Moreover, whether a criminal action is instituted by the Executive Branch, or a civil action is brought by private parties, judicial power is still brought to bear on Members of Congress and legislative independence is imperiled. We reaffirm that once it is determined that Members are acting within the "legitimate legislative sphere" the Speech and Debate Clause is an absolute bar to interference.

See 421 U.S. 491, 503, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975). Additionally, in *Gravel v. U.S.*, the Supreme Court stated, "We have no doubts that Senator Gravel may not be made to answer—either in terms of questions or in terms of defending himself from prosecution for the events that occurred at the subcommittee meeting." 408 U.S. 606, 616, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972)(holding that a senator could not be required to testify about legislative acts that occurred in a subcommittee meeting).

In *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, the Supreme Court considered whether the Village of Arlington Heights violated the Equal Protection Clause by denying a zoning change that would allow for low-income multi-family housing. 429 U.S. 252, 254, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). The Supreme Court discussed the evidentiary proof needed to show an Equal Protection violation, specifically when a plaintiff must prove a discriminatory intent or purpose by a legislative body. *See id.* at 265–68, 97 S.Ct. 555. The Court stated that such proof requires "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.* at 266, 97 S.Ct. 555. The Court explained that such forms of proof could include the impact of the official action, the historical background of the decision, the sequence of events leading up to the decision, contemporary statements made by the decision makers, minutes from meetings, and other reports. *Id.* at 266–68, 97 S.Ct. 555. The

Court stated, "In some extraordinary instances the members might be called to the stand at trial to testify concerning the purpose of the official action, although even then such testimony frequently will be barred by privilege." *Id.* at 268, 97 S.Ct. 555. (citing *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951)). The Supreme Court did not identify what might constitute an "extraordinary" instance but reasoned that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government." *Id.* at n. 18.

Several circuit courts have also recognized the testimonial privilege as it applies to federal and state legislative actors. In *Brown & Williamson Tobacco Corp. v. Williams*, the Circuit Court for the District of Columbia held that the Speech and Debate Clause just as vigorously provides congressmen a testimonial privilege as it provides them immunity from suit. *See* 62 F.3d 408, 421 (D.C.Cir.1995). In *Williams*, the Circuit Court for the District of Columbia directly addressed the appellant's argument that the testimonial privilege was weaker than immunity from suit under the doctrine of legislative immunity. The court disagreed with the appellant's argument and reasoned:

> Looking only to the text of the Constitution, we would be inclined to conclude that, if anything, appellant has it backwards. The Clause says nothing specifically about lawsuits; what it does say is that members of Congress "shall not be *questioned* in any other place" about legislative actions. U.S. Const. art. I, § 6, cl. 1 (emphasis added). Based on the text of the Constitution, it would seem that the immunity from suit derives from the testimonial privilege, not the other way around.

*Id.* at 418. Also, the Fourth Circuit, while not directly addressing whether the testimonial privilege arises from the doctrine of legislative immunity, stated in *Schlitz v. Commonwealth of Virginia* that "[t]he purpose of the [legislative immunity] doctrine is to prevent legislators from having to testify regarding matters of legislative conduct, whether or not they are testifying to defend themselves." 854 F.2d 43, 46 (4th Cir.1988)(citing *Gravel,* 408 U.S. at 616, 92 S.Ct. 2614) *overruled by Berkley v. Common Council of City of Charleston,* 63 F.3d 295, 303 (4th Cir.1995)(stating that the court was not addressing the vitality of the testimonial privilege discussed in *Schlitz).* Similarly, in *Miller v. Transamerican Press, Inc.,* the Ninth Circuit held that the Speech and Debate clause requires that a congressman "shall not be questioned on matters to which the privilege applies." 709 F.2d 524, 529 (9th Cir.1983)(holding that a former congressman could not be required to testify with regard to his previous legislative acts).

The Supreme Court and several circuit courts have clearly recognized that the doctrine of legislative immunity protects legislative actors from being called to testify about their legislative activities. In both *Bogan* and *Eastland,* the Supreme Court discussed the absolute nature of legislative immunity. In *Eastland,* the Supreme Court specifically stated that the Speech and Debate Clause offers "an absolute bar to interference." 421 U.S. at 503, 95 S.Ct. 1813. In *Gravel,* the Court stated

it had "no doubt" that the Speech and Debate Clause prevented the questioning of congressman with regard to their legislative activities. 408 U.S. at 616, 92 S.Ct. 2614. Furthermore, in *Village of Arlington Heights,* the Supreme Court indicated that only in "extraordinary instances" is a legislator protected by legislative immunity required to testify.[2] 429 U.S. at 268, 97 S.Ct. 555. In *Brown & Williams Tobacco Corp. v. Williams,* the Circuit Court for the District of Columbia reasoned that the Speech and Debate Clause speaks directly to the testimonial privilege, however, it makes no direct mention of the widely recognized immunity from suit. *See* 62 F.3d at 418.

■ Although the Supreme Court and appellate court decisions cited above do not directly address the application of the testimonial privilege to local legislators, in *Bogan,* the Supreme Court stated that "[t]he rationales for according absolute immunity to federal, state, and regional legislators apply with equal force to local legislators." *Id.* at 52, 118 S.Ct. 966. Therefore, it is reasonable to conclude that the rationales for applying the testimonial privilege to federal, state, and regional legislators apply with equal force to local legislators. Accordingly, local legislators are protected by the testimonial privilege from having to testify about actions taken in the sphere of legitimate legislative activity.[3] To hold otherwise, would undoubtably have a chilling effect

---

**2.** Additionally, in *Village of Arlington Heights,* the Court laid out the type of direct and circumstantial evidence that can be used to prove the motives of a legislative body when such motives are an element of the plaintiff's cause of action without requiring the legislators to waive their testimonial privilege. The same type of evidence *is* available to Cunningham in this case.

**3.** The Texas Supreme Court also held that legislative immunity protects legislative actors

from having to testify with regard to their legislative activities. In *In re Perry,* 60 S.W.3d 857(Tex.2001), the Texas Supreme Court relied on the Speech and Debate Clauses of the Texas and United States Constitutions as well as most of the cases cited above and held that the trial court abused its discretion by denying a motion to quash a deposition filed by members of the State's Legislative Redistricting Board. *See* 60 S.W.3d at 859–62.

on local legislative bodies and their members. Denying local legislators the protection of the testimonial privilege would likely dissuade some citizens from volunteering for such local legislative bodies and would surely hinder the free flow of discussion that is such an integral part of the democratic legislative process employed by these and all other legislative bodies in this country.

## Legislative Action by the Board of Trustees

■■ An act is considered legislative based on the nature of the act and not the motive or intent of the official or officials performing it. *Id.* at 54, 118 S.Ct. 966. In *Bogan*, the Supreme Court held that the city counsel's act of voting on an ordinance was "quintessentially legislative." The Court held that the city counsel's decision to terminate the plaintiff's position "bore all the hallmarks of traditional legislation" because "[t]he ordinance reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." *See id.* at 55–56, 118 S.Ct. 966. Here, the acts of Mosely and the other trustees in voting to deny Cunningham's Level III grievance and to ratify the dissolution of the Maintenance Department were similarly legislative in nature. Like the vote in *Bogan*, the vote by the CHISD trustees terminated a position and was based on a policymaking decision implicating the budgetary priorities of the school district. The action was "quintessentially legislative." [4]

## Conclusion

The testimonial privilege is an inherent aspect of the legislative immunity that applies to local legislators under the Speech and Debate Clause of the United States Constitution. The vote taken by the CHISD Board of Trustees with regard to Cunningham's Level III grievance was a legislative act. Accordingly, the doctrine of legislative immunity protects Mosely and the other trustees from having to testify with regard to actions taken in the sphere of legitimate legislative activity, including the denial of Cunningham's Level III grievance. [5]

Cunningham may not depose Mosely or other trustees with regard to anything that occurred while the Board was debating, discussing, or voting on the decision to deny Cunningham's Level III grievance. Cunningham is also prevented from asking any questions regarding the mental impressions of Mosely or other trustees during the September 19 session at issue, or any other session held by the Board. However, the testimonial privilege is narrow in the sense that Cunningham may depose Mosely and the other trustees with regard to anything that occurred outside the sphere of legitimate legislative activities. Cunningham may ask Mosely or other trustees questions related to comments they might have made to members of the public or the press prior to or after the

---

4. In this case, the CHISD Board Members voted on a Level III grievance that addressed, among other things, the validity of a policy decision made by the CHISD Superintendent to reorganize a department, which eliminated Cunningham's position. The Court was not presented with a set of facts were the CHISD Board made or ratified an employment decision directed solely at a specific individual. Such a set of facts might present a situation where the actions of the Board might not be considered legislative and the testimonial privilege might not apply.

5. Based on its reasoning in *In re Perry*, the Texas Supreme Court would likely come to the same conclusion as this Court and allow the CHISD trustees to invoke the testimonial privilege with regard to Cunningham's cause of action under the Texas Whistleblower Act.

session in question, even if the comments were related to the session. However, Cunningham may not ask questions related to discussions or comments made by trustees or to trustees during the session in question, or any other session.

### CHISD's ELECTION

 At the hearing on June 29, 2006, Cunningham brought an additional concern to the Court's attention regarding the application of the testimonial privilege. Cunningham raised the concern that CHISD might call one or more of the trustees to testify at trial about the very issues it is now claiming Cunningham cannot depose those board members about. CHISD should not be able to use the testimonial privilege as a shield and a sword. CHISD should not be allowed to prevent Mosely or other trustees from being deposed with regard to the Board's motivations for denying Cunningham's Level III grievance and then call a trustee at trial to testify about these motivations.

To the extent that the testimonial privilege applies to Mosely and the other CHISD trustees, the Court puts CHISD to an election. If CHISD elects to elicit such testimony from Mosely or another trustee at trial it will effectively waive the testimonial privilege as to that trustee. The Court will then allow Cunningham to depose the trustee without the trustee having the benefit of the testimonial privilege. If CHISD does not elect to ask such questions of Mosely or another trustee at trial there will be no need for Cunningham to take any further depositions. The Court will ensure that CHISD is held to its election at trial.

### CONCLUSION

For the reasons stated above, the Court **GRANTS** CHISD's motion in part with respect to the protective order. However, due to the fact that Mosely can be deposed on topics outside the scope of the testimo-nial privilege and because he has already been deposed, the Court **DENIES** CHISD's motion in part with regard to the motion to quash. Furthermore, the Court **ORDERS** CHISD to file its election with the Court by 5:00 p.m. on August 1, 2006 indicating whether it plans to call Mosely or any other trustee to testify at the October 3, 2006 trial about facts within the scope of the testimonial privilege. Any deposition taken by Cunningham as a result of CHISD's election must be completed on or before August 15, 2006.